## Bonomo v. Bonomo, Appellant.

452

Argued March 4, 1936. 

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, PARKER, JAMES and RHODES, JJ. ██

*Chas. F. Wharen,* for appellant.

*Louis Shaffer,* for appellee.

OPINION BY JAMES, J., September 30, 1936:

On April 21, 1934, libellant filed his libel in divorce alleging wilful and malicious desertion and the subpoena was personally served upon the respondent; an appearance was entered for her but no answer filed. On June 20, 1934, two days after the return day of the subpoena, respondent filed a petition for an allowance for alimony and counsel fees averring she had not wilfully and maliciously deserted the libellant but was forced by reason of his misconduct and cruel treatment to leave their home. On June 21, 1934, a master was appointed before whom appeared, on September 13, 1934, libellant, his counsel and several witnesses and respondent, her counsel and witness. At the conclusion of libellant's case, objection was made to the admission of any testimony on behalf of the respondent for the reason that no answer had been filed. The master permitted the respondent and one witness to testify and adjourned the hearing to a later date, at which time he sustained the objection to respondent's testimony and it was stricken from the record. Between the date of the first and second hearing, an answer was filed by the respondent. The master recommended a decree in divorce, but upon exceptions being filed, the court directed that respondent be permitted to offer her defense in full. The original master having died, a new master was appointed, who heard testimony and recommended a divorce, which report was later approved by the court of common pleas and a final decree entered, from which decree respondent has appealed.

In referring the matter back to the master, the court below followed the proper course. As this question has frequently arisen and the decisions of several of

the courts of common pleas of our Commonwealth are in conflict, we feel it advisable to express our opinion as to the admissibility of testimony by a respondent who has failed to file an answer. Much of the conflict of opinion in the courts of common pleas is due to the observation of the lower court in *Oxley v. Oxley*, 191 Pa. 474, 43 A. 340, in which proceeding the respondent had been fully heard, the court there stated: "We desire to call attention to the fact that the respondent did not file any answer and yet he appeared before the examiner with his counsel, cross-examined the libellant's witnesses and testified in his own behalf. This is not good practice. Under the law and rules of this court if he desired to offer testimony, he should have filed an answer raising an issue, and this is so whether he desired an issue to be tried by the court or by a jury." The decree of the court below was affirmed in a per curiam opinion, in which it was stated the court was satisfied the findings of fact, upon which the decree was based, were fully warranted by the evidence. Whether the testimony of the respondent, under the circumstances, was admissible or not was not involved on the appeal.

The Divorce Law of 1929, P. L. 1237 provides a complete system of procedure for the determination of divorce actions for the causes therein mentioned. Marriage is a relation in which the public is deeply interested and is subject to dissolution only for the causes sanctioned by law. Judgment by default or pro confesso does not apply to an action in divorce, as proof of the cause is required to convince not only the court of common pleas, but also the appellate courts, who, on their independent judgment, must find that a cause has been established. Accordingly, the Commonwealth is always the unnamed third party to a divorce proceeding, and the court or master on its behalf, should take up the investigation of any fact, the determination of which is material to the issue involved. Every libel shall

be accompanied with an affidavit by the libellant that the facts contained in the libel "are true to the best of his or her knowledge and belief, and that the said complaint is not made out of levity, or by collusion between the said husband and wife, and for the mere purpose of being freed and separated from each other, but in sincerity and truth for the causes mentioned": Divorce Law, 1929, supra, §25. Thus it is incumbent that all the facts concerning the cause of divorce should be fully investigated. Section 31 of the Divorce Law provides that the respondent may file an appearance and an answer, but for the failure to do so, the respondent is not barred from introducing testimony to refute the charges set forth in the libel. True it is, by section 66 of the act, the several courts of common pleas are authorized to adopt such rules and practice as may be necessary to carry the act into effect, and the better practice undoubtedly is that an answer be filed; but the fullest opportunity, at any stage of the proceeding, should be allowed to determine the truth, whether from the respondent or at the instance of the master or the court, subject to such limitations as in the exercise of sound discretion shall not impose undue hardship upon either party. See *Allison v. Allison,* 46 Pa. 321; *Magill's Appeal,* 59 Pa. 430; *Daugherty v. Daugherty,* 28 Pa. Superior Ct. 327; *Newhard v. Newhard,* 86 Pa. Superior Ct. 537.

We recognize that it is our duty to examine the testimony carefully and make our independent finding, still the report of the master, who had the advantage of seeing and hearing the parties and their witnesses, is to be given "fullest consideration": *Lyons v. Lyons,* 116 Pa. Superior Ct. 385, 176 A. 792. In the present case, we have the recommendations of two masters and the approval of the court below.

We shall not attempt to relate the entire testimony, but only such as we believe to be important in the de-

termination of the issue involved. Libellant and respondent were married in White Haven, Luzerne County, Pa., on July 30, 1924, residing at various places in the county, and were living at Forty Fort Borough at the time of the desertion. At the time the libel was filed, libellant was thirty-four years of age and respondent thirty-five years, having two children, aged eight and four years. Libellant's occupation was that of a barber, but he had been conducting a beauty parlor which had recently failed. In the latter part of April 1932, libellant returned from his work and found that his wife and children had left the premises and nearly all of the furniture had been removed. On the following day he saw his wife and children at the home of his brother, at which time he complained to her about her leaving. Respondent had received the sum of $200, the surrender value of an insurance policy upon the life of her mother, which, it had been agreed, the husband was to receive in order to start in business. At this time he had a business place and an apartment to rent. According to the husband's testimony, the wife said she was going to buy clothes and have a good time, and in spite of his objections, on April 28, 1932 left with the children on a trip to California; while the wife's testimony was that libellant had urged her to take the money for the trip. A few months after she left, she wrote to the libellant for money and he sent her $10 for the children. The wife returned to Pennsylvania in September 1932, but no effort was made by her to see her husband. Sometime after her return, she instituted a nonsupport proceeding and the libellant was committed to jail where he remained for several weeks but was released on promise to comply with the order of court. Upon his release from jail, arrangements were made for libellant and respondent to meet at the home of libellant's sister, but respondent failed to appear. No effort was ever made by respondent to resume marital

relations since her return from the Californian trip and she has told others that she refused to live with her husband.

In respondent's petition for alimony and in the answer later filed, she asserted that her withdrawal from the home was the result of libellant's cruelty and misconduct. By such an answer "the burden of proof was thus shifted, as all of the authorities declare, and it became incumbent on respondent to establish by the preponderance of the evidence, a state of facts that would entitle her to a decree of divorce on the grounds advanced in her answer": *Ingram v. Ingram,* 58 Pa. Superior Ct. 522; *Thomas v. Thomas,* 96 Pa. Superior Ct. 258; *Elwell v. Elwell,* 102 Pa. Superior Ct. 337, 156 A. 553; *Lyons v. Lyons,* supra. Our examination convinces us that she had not met this burden. Respondent's testimony as to the misbehaviour of libellant with other women was based largely on suspicion and although she testified that the misbehaviour extended over a period of several years, she continued to live with him to the date of the separation. Nor are we persuaded, in the face of libellant's denials, that the single act of cruelty —alleged to have been committed several days before the respondent's withdrawal—over a marriage period of eight years, is sufficient to establish her defense. The depositions of respondent's sister, living in Illinois, appear to us to be largely fantastic, particularly as they contain matter which even the respondent made no mention of in her testimony. Before this court made its order allowing the appeal to be heard on the typewritten record, an agreed statement of facts was filed and approved, but no mention was made of the sister's testimony; so that in determining the correctness of the decree, we have not placed much weight upon these depositions.

We are further convinced that the trip to California

was taken by respondent in spite of the objections of her husband. She admits that the insurance money was obtained for the use of the husband, who at the time of her departure had obtained a location for his business and an apartment. To believe that in the face of these facts, libellant urged his wife to take a trip to California is a strain upon our credulity. However, even if she left without her husband's consent and returned to Pennsylvania, in the eyes of the law, the door was still open for her return during the statutory period of two years. Although she returned to Pennsylvania in September 1932, no effort or offer to return was made by her up to the date of the hearing. Under these circumstances, if she left in spite of her husband's objections, as we believe the testimony establishes, it was her duty to make the first advances toward a reconciliation. Where the separation is without reasonable cause or legal justification, and the other spouse has not directed or consented to the separation, either expressly or by fair implication, the departure from the common home in such case is wilful and malicious desertion, and continues to be such until the deserting spouse in good faith seeks a reconciliation and offers to go back and resume marital relations: *Ward v. Ward,* 117 Pa. Superior Ct. 125, 177 A. 515. The record clearly establishes that she made no effort or no offer to return to or resume the marital relations with her husband. Under these circumstances, we believe the record fully justifies the decree of divorce.

Decree affirmed.