## Benjeski, Appellant, *v.* Benjeski.

Argued May 6, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Norman Paul Wolken,* with him *Samuel O. Magram,* for appellant.

*Donald W. Ebbert,* with him *Charles C. Hewitt,* for appellee.

58

OPINION BY KENWORTHEY, J., July 23, 1942:

In this divorce action brought by the husband on the grounds of indignities and cruel and barbarous treatment, the court below dismissed the libel on the ground that respondent's conduct, though amounting to · indignities, resulted from dementia praecox from which she was suffering throughout the major part of her married life. The correctness of this ruling presents the single issue in the case.

Libellant's testimony concerning respondent's conduct was scarcely contradicted except in minor details. It will not be necessary to describe it, except to say that it clearly indicated a lack of emotional control.

The parties were married in 1928. They had one child born in 1931. The first six months of their married life were relatively uneventful. It was then that respondent's emotional instability began to manifest itself. Her condition reached a crisis in 1932, and because of it she was removed to the home of her parents, where she remained for about eight months and was then institutionalized. She was in the hospital for five weeks. Her condition was diagnosed as "manic-depressive psychosis, depressed type." According to Dr. Mitchell who attended her, there had been a history of a previous attack in 1930, which lasted about a week. This attack is not described or referred to elsewhere in the testimony. The doctor testified: "Her mental state during her stay there [the hospital] was essentially that of a depression of which there were some elements to it that indicated it was a mixed type and the diagnosis was not very clear cut. It was a question as to whether it was manic-depressive, which is entirely emotional, or whether it was dementia praecox, which is a much more serious type of mental disturbance." After leaving the hospital, respondent reported to the doctor several times and she "seemingly

got along pretty well after she went home, although seemingly still somewhat unstable."

Respondent was re-admitted to the hospital on March 2, 1937. The doctor testified: "The diagnosis at that time was dementia praecox of a mixed type. The history, the interval history then was to the effect that the patient had had two previous attacks ...... she had one in 1932, concerning which I testified, and that she had one that lasted seven weeks in 1935. The attack for which she was admitted to the St. Francis Hospital in 1937 began in September, 1936, and was not unlike the preceding one." Respondent remained in the hospital until October 14, 1937, when she was taken home, but had to return on November 11, 1937 and remain there until January 23, 1938. While in the hospital, "She ran an extremely violent course. Sometimes it was thought that she would exhaust herself and not live; had to be tube fed and so forth."

From the hospital respondent went to the home of her parents and has not lived with libellant since.

According to the doctor, after returning home, she "again did fairly well, although she was nervous, tremulous and somewhat unstable emotionally, perhaps, but her psychotic manifestations, so far as delusions and that sort of thing was concerned, had disappeared."

The course of respondent's illness thereafter is not accurately described in the testimony. It appears, however, that in March 1940, an attempt by libellant to secure, through legal process, the custody of their child precipitated another attack, and, at the time of the divorce hearings in October 1940, she, although at home, was under the constant care of a nurse.

In the doctor's opinion all of respondent's conduct throughout the period was attributable to the disease.

In our opinion, the order of the court dismissing the libel must be affirmed.

Ordinarily, as stated by BOND, C. J., speaking for the

Court of Appeals of Maryland in *Kruse v. Kruse,* 179 Md. 657, 22 A. (2d) 475, 478: "...... the law does not undertake to distinguish among the various degrees of lack of control short of insanity, and select those which prevent a divorce and those which do not." Yet we held in *Crock v. Crock,* 96 Pa. Superior Ct. 377, that the effect on conduct of a demonstrable disease such as diabetes is something which courts may consider. Even insanity is not a defense unless shown to have been responsible for respondent's conduct. See *Baughman v. Baughman,* 34 Pa. Superior Ct. 271, 274. But where, as here, a well-known form of insanity is proven to exist and there is uncontradicted testimony by a competent physician that the emotional instability was attributable to the disease, we have no hesitancy in concluding, however burdensome libellant's lot may be, he is not entitled, under our laws, to a divorce. If insanity, occurring after marriage, is not a ground of divorce, neither are the results of insanity. There is an illuminating discussion of the subject by GORDON, J., in *Hansell v. Hansell,* 3 Dist. 724 (C. P. Phila.).

The order is affirmed.