## Geckle v. Geckle

*Monroe H. Anders*, for libellant.

*Charles H. Brunner, Jr.*, for respondent.

DANNEHOWER, J., February 16, 1945.—The question involved is whether a respondent in a divorce action, who has taken no steps toward a presentation of her defense although personally served with the subpœna and personally notified of the master's hearing by registered mail, may have the matter referred back to the master when her petition for that purpose and her appearance by attorney were filed more than 15 days after the filing of the master's report.

The history of this case is as follows: The libel alleging cruel and barbarous treatment and indignities to the person was filed on January 27, 1944, and a subpœna awarded and issued, returnable March 6, 1944. The subpœna was personally served upon respondent on January 28, 1944, the very next day after issuance and while the parties were still living together. They separated sometime during the following month. There having been no appearance on the part of respondent, the case proceeded ex parte and interrogatories were filed and the master appointed on September 1, 1944. Timely notice of the first meeting before the master

was sent to respondent, who personally receipted for the registered mail notice on September 11, 1944. Pursuant to the notice the master's meeting was held on September 27, 1944, and respondent did not appear. On October 11, 1944, the report of the master, in which was recommended the granting of a decree on the ground of indignities to the person, was filed in the office of the prothonotary. On the same day the master gave notice of such filing not only to libellant's attorney, the only notice required by our rule of court, but also by registered mail to respondent in Johnson City, N. Y. The letter to respondent contained a notice that unless exceptions to the report were filed within 15 days from October 11th it would be presented to the court for consideration.

Under date of October 24, 1944, respondent executed in favor of her attorney a warrant of attorney. This together with a præcipe for appearance was filed with the prothonotary on October 27, 1944, and on the same day, which was the day fixed by rule of court for presentation of divorce reports, there was also filed respondent's present petition by her attorney asking that the report be referred back to the master for further testimony. In support of the prayer of the petition there are alleged, inter alia, the following reasons: (1) The testimony of libellant is false, and respondent has a complete defense to the action; (2) respondent has been employed as a nurse at the plant of Remington-Rand Corporation at Binghamton, N. Y., and being on call at all times it was almost impossible for her to travel to Norristown, Pa., unless she gave up her position; (3) on numerous occasions since the filing of the libel, libellant has professed his love for respondent by letter and telephone and told respondent that he had dropped the charges and terminated the action in divorce; (4) libellant has cohabited with respondent as man and wife on three occasions since the filing of the

libel, namely, on May 7 and 8, 1944, in Philadelphia, Pa., on May 20, 1944, at Binghamton, N. Y., and on June 10, 1944, at Stroudsburg, Pa., and has thus committed a fraud on the court.

A rule was granted on November 6th, and an answer denying the allegations of the petition was filed on November 20th, and on November 24th the matter was ordered on the argument list. During the argument it appeared that sometime in May 1944 respondent had inquired by mail of the president judge as to the status of the case, to which he replied on May 31st that the record did not show that the charges had been dropped and the action discontinued. After argument the case is now pending for decision.

Here we have a case where at no time until the very day of the presentation of the master's report for consideration by the court has the respondent wife taken any formal step to participate in the case, and the broad question involved is whether the interests of justice and public policy require the granting of the petition.

It need hardly be mentioned that so far as respondent is concerned our rules of court as they apply to divorce cases have been disregarded. The appearance was not filed prior to the return of the subpœna, no answer has been filed and no exceptions to the master's report have been filed as provided by our rules. Such disregard of the rules is to be discouraged, and were this a case involving purely private interests we might be inclined to enforce them strictly against a respondent who has waited until the "last horn has blown" before acting.

However, the public interest in preserving the sanctity of the marriage relation has been deemed so important as to make the Commonwealth, which is the public, an "unnamed third party" in every divorce case, and to such a real extent as to compel in certain cases a drastic relaxation in the application of the rules in-

volved. This principle is widely known and has been applied in many cases. One of the more recent cases is Bonomo v. Bonomo, 123 Pa. Superior Ct. 451 (1936), where the propriety of considering the testimony of a respondent who had failed to comply with a rule requiring the filing of an answer was an issue. In approving the action of the lower court in permitting respondent to offer her defense in full, the court said at page 454:

"The Divorce Law of 1929, P. L. 1237 provides a complete system of procedure for the determination of divorce actions for the causes therein mentioned. Marriage is a relation in which the public is deeply interested and is subject to dissolution only for the causes sanctioned by law. Judgment by default or pro confesso does not apply to an action in divorce, as proof of the cause is required to convince not only the court of common pleas, but also the appellate courts, who, on their independent judgment, must find that a cause has been established. Accordingly, the Commonwealth is always the unnamed third party to a divorce proceeding, and the court or master on its behalf, should take up the investigation of any fact, the determination of which is material to the issue involved. Every libel shall be accompanied with an affidavit by the libellant that the facts contained in the libel 'are true to the best of his or her knowledge and belief, and that the said complaint is not made out of levity, or by collusion between the said husband and wife, and for the mere purpose of being freed and separated from each other, but in sincerity and truth for the causes mentioned': Divorce Law, 1929, supra, §25. Thus it is incumbent that all the facts concerning the cause of divorce should be fully investigated. Section 31 of the Divorce Law provides that the respondent may file an appearance and an answer, but for the failure to do so, the respondent is not barred from introducing testimony to

refute the charges set forth in the libel. True it is, by section 66 of the act, the several courts of common pleas are authorized to adopt such rules and practice as may be necessary to carry the act into effect, and the better practice undoubtedly is that an answer be filed; but the fullest opportunity, at any stage of the proceeding, should be allowed to determine the truth, whether from the respondent or at the instance of the master or the court, subject to such limitations as in the exercise of sound discretion shall not impose undue hardship upon either party. See Allison v. Allison, 46 Pa. 321; Magill's Appeal, 59 Pa. 430; Daugherty v. Daugherty, 28 Pa. Superior Ct. 327; Newhard v. Newhard, 86 Pa. Superior Ct. 537."

A very similar case is that of Geyer v. Geyer, 124 Pa. Superior Ct. 313 (1936), where most of the above-quoted passage is again set forth.

And we had occasion to refer to the Bonomo case in our own case of Miller v. Miller, 53 Montg. 128 (1937), where quite similar circumstances existed.

Of course in the present case respondent has been much more lax than the parties in the above-cited cases, for in those cases the respondents appeared at the masters' hearings and either introduced or attempted to introduce testimony in defense of the action. Admittedly the factual situation from the standpoint of respondent is weaker than in those cases. But in the present case respondent has alleged that libellant told her that he had terminated the proceedings, and had cohabited with her since the beginning of the divorce action, which if true is evidence of fraud on the court, and positive injury and injustice would result if relief were refused. We believe, however, that the principle remains the same, that the truth should be determined "at any stage of the proceedings", and, therefore, in the interest of justice we are impelled to grant the prayer of the petition, which action we do not consider

as imposing an undue or unreasonable hardship upon libellant. We shall, therefore, permit respondent to file an answer nunc pro tunc even though the master's report has been filed, which we deem better practice.

Of course the credibility of the witnesses, the weight of their testimony, the good faith and sincerity of the parties are matters for future consideration, as are also the entire merits of the case.

And now, February 16, 1945, for the reasons given in the foregoing opinion, the rule is made absolute, and the report is referred back to the master for the purpose of allowing respondent and her witnesses to testify and to take such other testimony as the parties may wish to present, provided that respondent shall within 15 days from this date file an answer, which is hereby allowed nunc pro tunc.