CECIL J. LAWSON, Claimant-Appellant, v. CHRYSLER CORPORATION, Employer-Appellee.

(*March* 30, 1964.)

STIFTEL, J., sitting.

*James P. D'Angelo* and *John A. Faroane* for Claimant-Appellant.

*David B. Coxe, Jr.,* and *Carl Schnee* (of Coxe, Booker, Walls and Cobin) for Employer-Appellee.

Superior Court for New Castle County, No. 3111, Civil Action, 1963.

STIFTEL, Judge.

Appeal by claimant from a decision of the Industrial Accident Board dismissing his claim for compensation on the ground that the blindness of his left eye was not caused by a foreign substance entering his left eye on August 31, 1961, while he was engaged in lifting heavy bales of paper to place on his jitney truck in the course of his employment at the Chrysler plant in Newark, Delaware.

Claimant's daily job was to drive a jitney, with a trash cart fastened to it, through the Chrysler plant picking up debris from disposal cans and emptying the refuse into the cart. He also had the job of removing bales of paper from the paint department. These bales were made up of wrapping paper used for masking cars in order to keep paint off certain areas of the car. Normally, Mr. Lawson had a helper to assist him in performing his task.

On August 31, 1961, at about 7 P.M., while claimant was lifting a bale of paper weighing approximately 125 to 150 pounds, without an assistant, he explained: "I felt something get in my eye. A tear hit me in the eye." He went to his foreman and received a pass to go to the sub-medical station in the plant where the nurse took something out of his eye; but, after he kept insisting that it still felt like something was in his eye, he was referred by the sub-station nurse to the nurse at the main medical station at the plant, who explained: "I looked in his eye and removed a floating particle." Mr. Lawson then went home in tremendous pain and awakened his wife, who stated that the area was red and inflamed.

The next day, on September 1, 1961, claimant returned to the aid station at the plant where his eye was washed again by the nurse and then he was referred to Dr. Perry L. Munday, an eye, ear, nose and throat specialist, who saw him at 6:10 P.M. the same day. He explained to Dr. Munday that while he was working something got

into his left eye and that he went to the nurse and the nurse got something out of his eye. Dr. Munday found the vision in the claimant's left eye to be 20/200 and further that he had a large abrasion of the cornea and as a consequence, was unable to see out of his eye, nor could the doctor see into it. After treating his eye, and putting a patch on it, Dr. Munday instructed claimant to return on September 2. At this time, the cornea was healed; and after receiving additional treatment from the doctor, claimant returned home. He visited the doctor again on September 5, when the cornea was completely healed and the vision in the left eye was still 20/200. At this time, the doctor used the opthalmoscope and discovered that the patient had a temporal detached retina. He reported his findings to Dr. Bredall, chief doctor at Chrysler. While Lawson was still in his office, Dr. Munday telephoned Dr. Harold Pierce, an opthalmologist at Johns Hopkins Hospital in Baltimore, who was unable to receive Lawson at once, but agreed to accept him as a patient as soon as a bed became available at the Wilmer Institute of Johns Hopkins.

After receiving certain preliminary treatment which Dr. Munday had discussed with Dr. Pierce, Lawson was instructed to remain at home in bed until he was informed by Dr. Pierce that he was ready for him, at which time he was to be removed to Baltimore by ambulance. This is the last contact Dr. Munday had with the claimant.

Lawson was telephoned to report to Dr. Pierce on Saturday, September 9, but on September 8, the appointment was cancelled by Chrysler, either with or without the consent of Lawson, and instead, he was sent on the same day to Dr. Davis Durham, a Wilmington opthalmologist. Dr. Durham diagnosed Lawson's difficulty as a bilateral diabetic retinopathes with detachment of the retina

in the left eye secondary to diabetes and referred him to Dr. P. Robb McDonald, Chief of Opthalmology at Wills Eye Hospital in Philadelphia.

On the 9th of September, Lawson told Dr. McDonald that nine days before, a piece of masking paper struck his left eye. Dr. McDonald's diagnosis was the same as Dr. Durham's, a retinal detachment due to degeneration of the retina caused by diabetes. The history given to the treating physicians and the history given to Chrysler medical department by Lawson indicate that he understood his injury on August 31 to have been caused by something either entering his eye or touching his eye at the time he was lifting a bale of paper. In his signed petition for compensation dated July 11, 1962, filed with the Board, claimant stated that his accident was caused by the masking paper hitting his left eye. During the hearing before the Board, on June 12, 1963, claimant's counsel sought to establish by his questioning that the detached retina may have been caused by the lifting of a heavy bale of paper on August 31, rather than by a foreign object entering or touching his eye. Dr. Munday gave support to this theory by testifying that the alleged foreign body entering or touching claimant's eye had nothing to do with the retinal detachment, but that his strenuous activity in lifting "could have been contributory to the retinal detachment". Also, Dr. Joseph C. Cobots, an opthalmologist practicing in nearby Chester, Pennsylvania, in testifying as an expert for claimant, stated that heavy lifting by Lawson on August 31, 1961, could have precipitated the retinal detachment. Dr. Cobots saws Lawson on December 10, 1962, more than a year after the incident, and he explained that the patient told him that he was injured "while loading bales of paper on a flat" and that "he felt that something, as though something struck his left eye after that he noticed his vision was blurred." Dr. Cobots diagnosed Law-

son's trouble as diabetic retinopathy of both eyes and explained that the right eye had also deteriorated.

On July 31, 1963, the Industrial Accident Board concluded that Cecil J. Lawson sustained a personal injury in the course of his employment when a foreign body entered his left eye, but that he did not establish by a preponderance of the testimony that the blindness in his left eye was related or caused by the August 31 occurrence and thus dismissed the claim.

On appeal, this Court determines only whether or not the record contains evidence to support the findings of the Board. If it does, the Board's findings must be affirmed. *Faline v. Guido and Frances DeAscanis & Sons,* Supreme Ct.Del., 192 A.2d 921, 923; *Belber Trunk and Bag Co. v. Menesy,* 8 Terry 595, 96 A.2d 341; *General Motors Corp. v. Freeman,* 3 Storey 74, 164 A.2d 686 ("substantial evidence").

In a workmen's compensation case, plaintiff has the burden of proving his demand by a preponderance of the evidence. As an indispensable prerequisite to recovery, claimant must prove a causal connection between the accident occurring within the course and arising out of his employment and the injury and disability allegedly resulting therefrom. The Board concluded that claimant had failed to establish the required causal connection.

In support of its contention that there was no causal connection between claimant's accident and the loss of sight in his left eye, defendant offered the testimony of an optometrist and two opthalmologists, whose testimony will be considered separately.

Dr. Oscar Bregman, the optometrist, testified that Mr. Lawson visited him on May 11, 1961, a date more than three and one-half months before the accident on

August 31, 1961. and complained that his left eye had been blurred for a period of three to four weeks. At that time, he told Dr. Bregman that he was being treated by Dr. Walker for diabetes and had been under treatment for approximately four years. His vision was approximately 20/200 in his left eye and 20/40 in his right eye; and the doctor concluded there was a strong indication of diabetic retinosity which was more advanced in his left than in his right eye and that this condition was present in both eyes. After this diagnosis. Dr. Bregman referred Mr. Lawson to the offices of Dr. Davis Durham and Dr. LaMotte in Wilmington for further confirmation of diabetic retinosis.

Dr. Davis Durham, an eye specialist, testified that his office records show that Dr. LaMotte examined Mr. Lawson at the request of Dr. Bregman on May 12, 1961. On September 8, eight days after the accident, Dr. Durham testified that his examination disclosed that the entire temporal half of the retina in Lawson's left eye involving the maculi had been detached, that there were scattered hemorrhages and that there had been marked diabetic changes in the left eye and early diabetic changes in the right eye. His opinion was that the prognosis was very poor and that the situation was not amenable to surgery since surgery was not successful in diabetic retinal detachment cases. Dr. Dhrham was asked if there was a connection between the trauma of the 31st of August and the subsequent loss of vision. He replied (T. p. 73):

"Well, my opinion would be that the injury described by the patient, a corneal type of injury, whether it was a foreign body in the eye or whether he was struck by a piece of masking paper, as described by Dr. McDonald, I can conceive of no connection between this and the finding of a retinal detachment. Anatomically, they are not

even related or not close."

And when asked for his opinion as to tne cause of the loss of vision in tne left eye, tne doctor answered: "Diabetes". Dr. Durham also expressed the opinion that lifting heavy equipment would make no difference in the final outcome since claimant was plagued with a deteriorative disease which would continue regardless of what he does, and that the only hope for an individual suffering from diabetic retinal detachment is to get his diabetes under control. In other words, he explained, the job is not a factor if a man is going to get in trouble with his retina from his diabetes.

Dr. McDonald, Professor of Opthalmology at the University of Pennsylvania Hospital and associate editor of two leading eye journals, explained that he recognized Lawson had a diabetic retinopathy. He stated that Dr. Wong, his associate, found the vision of Lawson's left eye was limited to counting fingers at two feet and that the eye revealed massive vitreous hemorrhage and was at the highest state of deterioration, which he explained to be grade 4. At this time, the right eye revealed evidence of early retinous proliferans, which he would classify as between grades 2 and 3. He explained that prognosis is nil for a grade 4. Also, he mentioned that he examines between 500 and 1000 retinal detachment patients a year and performs more than 200 operations a year and that he had never operated on a person with retinal detachment with diabetes retinosity "because it is never done". Dr. McDonald related that in his opinion, there was no connection at all between the traumatic injury which Mr. Lawson suffered on August 31, 1961, and the loss of his vision in his left eye; and furthermore, he explained, his employment was in no way connected with the retinal detachment. The doctor emphasized that heavy lifting was

not significant and indicated by way of example that the same identical process of deterioration and retinal detachment was now taking place in Lawson's right eye in spite of the fact that he has not been employed at any occupation since August 31, and that such deterioration would continue regardless of what work he performed unless he was able to bring his diabetes under control.

From the foregoing and other evidence, the Board decided there was an absence of causal connection between the occurrence of August 31 and the loss of sight of claimant's left eye for which he seeks compensation. It follows that the judgment of the Industrial Accident Board rejecting and dismissing Lawson's claim is supported by evidence in the record. Accordingly, the decision of the Industrial Accident Board is affirmed and this appeal dismissed.