## Gray, Appellant, *v.* Gray.

Argued September 15, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Maurice Freedman,* for appellant.

*Stanley P. Stern,* for appellee.

OPINION BY SPAULDING, J., December 13, 1971:

Appellant William Gray appeals from the decision of the Court of Common Pleas of Philadelphia County, Family Division, in following the findings of a Master and dismissing appellant's complaint in divorce, a.v.m. Appellant brought this action pursuant to §10 of The Divorce Law of 1929, contending that he is entitled to a divorce either based on (1) appellee's cruel and barbarous treatment, which endangered his life, or (2) indignities to his person by the appellee, rendering his condition intolerable and life burdensome.[1] It is our duty and responsibility to make an independent study of the evidence and determine whether a legal cause of divorce exists. *Eifert v. Eifert,* 219 Pa. Superior Ct. 373, 281 A. 2d 657 (1971), *Goldfine v. Goldfine,* 201 Pa. Superior Ct. 462, 193 A. 2d 695 (1963).

The parties were married in 1943 and have two adult children and a 15 year old son. While their marriage may have once been a happy one, in recent years it has been anything but harmonious. As found by the court below, the crucial event in the marital breakup for the purposes of this action occurred on January 10, 1970, when the parties' mutual abuse of each other was culminated by appellee shooting appellant. The circumstances of this incident are contested.

The record discloses that since August 1969 when the appellee left her job, marital differences intensified steadily. The Master and the court below found that the appellee did not cook for appellant or wash his clothing and that there was no conversation or com-

munication between them; that her actions toward him were in direct response to his association with another woman and his own predeliction not to talk to appellee or eat his meals at home. Without going into detail, it suffices to say that the record is replete with many other instances of physical and mental threats and indignities by the parties against each other leading up to what the court below most appropriately describes as "the tragic events of January 10, 1970." (R. 186a)

On that afternoon, appellant returned home to find that appellee had "disposed of" all of his clothing. When he confronted her in the kitchen she accused him of having spent the night with another woman, which he admitted. She also told him: "A. '[I]f you come home tonight, do not sleep in the same bed with me.' . . . Q. What did he do to you—A. He said, 'This is my house. I sleep where I please. You'll find out tonight.'" (R. 95a) He then either "hit" or "slapped" her in the face, knocking out a tooth.[2] Appellant then went to the basement, while appellee went upstairs and retrieved one of appellant's police service revolvers, which she had hidden. She returned downstairs to the kitchen and was washing the blood from her mouth when appellant started back upstairs from the cellar

---

[1] The Divorce Law of 1929, Act of May 2, 1929, P. L. 1237, §10, 23 P.S. §10, provides in pertinent part:

"1. [I]t shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, that the other spouse:

. . . .

(e) Shall have, by cruel and barbarous treatment, endangered the life of the innocent and injured spouse; or

(f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome; . . . ."

[2] Subsequently, three other teeth had to removed as a result of this incident.

to the kitchen. He stated that his purpose was to open the front door for his son and then leave, but appellee testified that she was frightened that he was returning to hit her again. As appellant started up the stairs, appellee did not flee. Instead, without any warning or admonition to keep away from her,[3] she shot her husband. Appellee continued firing down the stairs until the gun was empty, three of the six shots hitting appellant in the forehead, chest and shoulder. He was in the hospital for seventeen days following the shooting and remains partially without feeling in his legs due to a bullet still lodged near his spine.

It is well established Pennsylvania law that a single act of cruelty may be so severe and atrocious as to endanger life and justify a divorce. *Simons v. Simons,* 196 Pa. Superior Ct. 650, 176 A. 2d 105 (1961), *Eberly v. Eberly,* 154 Pa. Superior Ct. 641, 36 A. 2d 729 (1944). As stated by Judge MONTGOMERY in *Simons,* supra, at 653: "Cruel and barbarous treatment within the statute making such treatment a ground of divorce implies a merciless and savage disposition leading to conduct amounting to actual personal violence, . . . so as to render further cohabitation dangerous to physical safety. Rankin v. Rankin, 181 Pa. Superior Ct. 414, 124 A. 2d 639; Knaus v. Knaus, 173 Pa. Superior Ct. 111, 95 A. 2d 358." Here, there is no question of the severity of appellee's act (shooting the appellant) or that it endangered his life.

The crucial issue is whether there was sufficient provocation by the appellant to excuse the actions of the appellee, which would remove the appellant from

---

[3] The Master stated: "She was at the top of the stairs; said absolutely nothing to him and fired." (R. 169a) Appellant testified that he heard appellee admonish their son to keep away just before she opened fire, but this testimony was not relied on below. Appellee's testimony that she had been emotionally upset for some time seems irrelevant in view of the nature of her actions.

the class of "innocent and injured" spouses who are entitled to a divorce under the statute.[4]  As we recently stated in *Eifert*, supra, at n. 2, the doctrine of "comparative rectitude"[5] has not been accepted in Pennsylvania, but rather the statutory requirement that a plaintiff be "innocent" as well as "injured" has been held to mean that he does *not* have to be wholly free from all fault.  See *Murphy v. Murphy*, 204 Pa. Superior Ct. 576, 205 A. 2d 647 (1964).  In the instant case there was fault on the part of both parties prior to the shooting.

Both the trial court and the Master recognized the applicability of the doctrine of *Rankin v. Rankin*, 181 Pa. Superior Ct. 414, 124 A. 2d 639 (1956), to this action.  Although *Rankin* dealt with indignities, it is persuasive authority here for the proposition that retaliation to provocation which is excessive justifies granting a divorce.  When appellant struck appellee, she would have been justified in then defending herself.  She did not do so.  Instead, she went upstairs, where she could have unquestionably remained in safety until the police, whom she had summoned arrived.  She consciously chose, however, to return downstairs to the kitchen after arming herself with a revolver which she had previously hidden.  She then deliberately and savagely opened fire on her husband as he came up the stairs

---

[4] This case illustrates the difficulty under which our legal system labors due to the refusal of the Pennsylvania legislature to reform our domestic relations law.  No one can seriously argue that two people such as the parties in this case have any basis for a successful reconciliation in the future.  A divorce statute which allowed for divorce without the assignment of fault is the logical solution and we hope the legislature is not tardy in considering such a measure.

[5] "Comparative rectitude" can be defined as the principle "that where both parties are guilty of misconduct for which a divorce may be granted, the Court will grant a divorce to the one who is less at fault."  24 Am. Jur. 2nd D. & S., Sec. 228.

from the basement. Such conduct cannot be justified as mere retaliation—if it was retaliatory in nature it was certainly excessive. The appellee caused the encounter at which the shooting took place by returning downstairs armed with a weapon, which (we infer from our review of the record) she fully intended to use.

Since in our view this incident implies a savage disposition on the part of appellee towards her husband which led to actual personal violence endangering his life, he is entitled to a divorce on the grounds of cruel and barbarous treatment. While his conduct towards her was far from exemplary, it falls short of justifying such extreme retaliation.

After carefully reviewing the record, we hold that appellant is entitled to a decree of divorce based on appellee Mildred Gray's cruel and barbarous treatment endangering his life.[6] The decree of the court below is reversed and a decree of divorce for appellant granted on the grounds of cruel and barbarous treatment.

WRIGHT, P. J., and MONTGOMERY, J., would affirm on the opinion of Judge LAGAKOS.

---

[6] It is therefore unnecessary for us to consider appellant's second contention, indignities to his person.