## Barr *v.* Barr, Appellant.

Argued March 28, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*C. Richard Morton,* for appellant.

*Alexander Endy,* for appellee.

OPINION BY SPAETH, J., December 11, 1974:
This is an appeal from an order dismissing exceptions to a master's report and entering a final decree in divorce a.v.m.

The parties were married on March 23, 1951. On December 17, 1970, the husband filed an action for divorce, alleging indignities to the person, in the Court of Common Pleas of Chester County. The parties were each 44 years old and had two children (a girl, 15, and a boy, 9). A master was appointed and held hearings on April 17, 1972, and June 1, 1972. The husband's testimony may be summarized as follows: his wife was a poor housekeeper; she called him vile names in front of the children; she refused to attend social functions with him; she was never current with the laundry and ironing; she often refused to cook meals; four or five times she drank alcohol until she passed out on the sofa; and she would embarrass and berate him publicly.[1] The wife denied that she was a poor housekeeper.[2] She claimed to have accompanied her husband to every social function that she knew about, unless she could not get a baby sitter. She denied that she was tardy with the laundry, or that she did not cook meals. She said she never drank alcohol to the point of passing out.

While the master found much of the husband's testimony credible, she did not accept his allegations as to his wife's poor housekeeping, her inefficiency with the laundry, or her refusal to attend social functions as grounds for divorce. The master did, however, find that the general course of the wife's conduct over the past ten years showed that hate and estrangement had replaced love and affection, making the husband's life intolerable and burdensome and thus constituting indignities to the person. *See Giuffre v. Giuffre*, 187 Pa. Superior Ct. 154, 144 A. 2d 477 (1958). Accordingly,

---

[1] The last item was corroborated by a witness who said Mrs. Barr had "cornered" him at a Lions Club outing to criticize her husband.

[2] Her testimony was corroborated by each of her three witnesses.

in her report, which was filed on December 15, 1972, she recommended that a divorce be granted.

The court below interpreted the wife's exceptions to the master's report as making two arguments. The first was that the master had not given sufficient attention to evidence, not denied by the husband, of infidelity. The second concerned certain evidence regarding the wife's mental condition. The court found the evidence of infidelity irrelevant, and the evidence of the wife's mental condition insufficient to show "that the conduct complained of was caused by [the wife's] mental condition."

As is our duty, we have made an independent review of the record. See *Arcure v. Arcure*, 219 Pa. Superior Ct. 415, 281 A. 2d 694 (1971); *Benscoter v. Benscoter*, 200 Pa. Superior Ct. 251, 188 A. 2d 859 (1963). We have concluded that it is insufficient and that the case must be remanded for a further hearing.

Appellant first contends that the granting of the divorce was error as it was based on her husband's uncorroborated testimony. This argument is without merit. "A divorce may be granted upon the uncorroborated testimony of the plaintiff unless, of course, that testimony 'is not only contradicted but also shaken by the defendant.'" *Arcure v. Arcure, supra*, at 417, 281 A. 2d at 695, citing *Pascoe v. Pascoe*, 201 Pa. Superior Ct. 357, 359, 191 A. 2d 739, 740 (1963). In the present case, as has been noted, the master did find that in certain respects the wife (or her witness) had contradicted the husband's testimony. Even so, there was sufficient other uncontradicted evidence to support the master's finding that the wife no longer loved her husband and had made his life intolerable.

Appellant's contention regarding her husband's infidelity is also without merit. The husband did admit an extra-marital relationship with one Jill Vaughn in

1962. This affair, however, was followed by eight years of cohabitation with appellant without repetition of the transgression.[3] To be an innocent and injured spouse, a plaintiff need not be blameless. *Gray v. Gray,* 220 Pa. Superior Ct. 143, 286 A. 2d 684 (1971) ; *Margolis v. Margolis,* 201 Pa. Superior Ct. 129, 192 A. 2d 228 (1963) ; *Shoemaker v. Shoemaker,* 199 Pa. Superior Ct. 61, 184 A. 2d 282 (1962) ; *King v. King,* 198 Pa. Superior Ct. 336, 181 A. 2d 694 (1962). Appellant knew about her husband's transgression, accepted him back into the household, and continued to live with him as his wife for eight more years. In these circumstances the evidence of infidelity was insufficient to show that the husband was not an innocent and injured spouse. *See Gray v. Gray, supra,* at 146-47, 286 A. 2d at 686-87.

The troublesome issue is that of appellant's mental health. The husband testified, on cross-examination, that shortly after the birth of their second child, in 1962, his wife had been admitted to the psychiatric ward of a hospital in Lancaster for three weeks, and also that on four or five occasions since 1962 she was a patient at Fairmount Farms, a private psychiatric institution in Philadelphia.

It is settled law in Pennsylvania that conduct, no matter how severe, arising from mental ill-health is unintentional and therefore lacks the spirit of hate, estrangement and malevolence that is the heart of the charge of indignities. *Stewart v. Stewart,* 171 Pa. Superior Ct. 218, 221, 90 A. 2d 402, 403 (1952) ; *Fawcett v. Fawcett,* 159 Pa. Superior Ct. 185, 187, 48 A. 2d 23, 23-24 (1946) ; *Benjeski v. Benjeski,* 150 Pa. Superior Ct. 57, 60, 27 A. 2d 266, 267 (1942). The court below

[3] Appellee is currently living with one Sandy Sebastian but as this relationship did not start until after the parties had separated, in September, 1970, it is not a ground for refusing a divorce. *Gillen v. Gillen,* 195 Pa. Superior Ct. 60, 64, 169 A. 2d 340, 343 (1961).

14

recognized this principle but found it inapplicable because, in the court's view, "nothing in this record would justify this Court in setting aside the action of the Master on the grounds that the conduct complained of was caused by [the wife's] mental condition."

We cannot share this view of the record. Our conclusion might be different if the master had discussed the evidence of the wife's mental illness and had found, for reasons explained in her report, that the wife's illness was not the source of her objectionable conduct. The difficulty is that the master never discussed the evidence of the wife's mental illness at all. If one were to confine oneself to the master's report, one would never suspect there had been such evidence. This failure on the part of the master is especially striking when one examines the findings she did make. As discussed above, she rejected much of the husband's testimony, for example as to his wife's housekeeping and her willingness to entertain friends, but nevertheless found the wife guilty of indignities. Accordingly, in finding that the wife's conduct "exhibited disdain, studied neglect, abusive language, intentional incivility . . .," the master must have been relying on the evidence of what the wife had said to her husband. In view of the husband's admissions regarding his wife's treatment, however, it should have been apparent to the master that such conduct might not have been intentional but the result of mental illness and therefore insufficient to prove the charge of indignities. *Fawcett v. Fawcett, supra,* at 187, 48 A. 2d at 23-24; *Benjeski v. Benjeski, supra,* at 60, 27 A. 2d at 267.

It is essential that all facts relevant to a divorce be fully explored. *Cortese v. Cortese,* 163 Pa. Superior Ct. .553, 556, 63 A. 2d 420, 422 (1949); *Bonomo v. Bonomo,* 123 Pa. Superior Ct. 451, 454, 187 A. 222, 224 (1936). Since the master failed to make inquiry into the possi-

ble significance of the wife's apparent past mental illness, the court below should have done so, either by remanding to the master for further hearing or by itself receiving testimony on the issue. We recognize that the court below did refer to the issue in its opinion dismissing the wife's exceptions to the master's report. However, the reference is so brief and conclusory that we cannot regard it as an independent inquiry upon the court's part.

In these circumstances the record is so incomplete that we find ourselves unable to discharge our responsibility in good conscience. We might deny this divorce on the ground that, considering the evidence of his wife's mental illness, the husband had not met his burden of proof. *Barnes v. Barnes,* 181 Pa. Superior Ct. 427, 434, 124 A. 2d 646, 649 (1956); *Simpson v. Simpson,* 20 Ches. Co. Rep. 220, 222 (1972); *Ryce v. Ryce,* 5 D. & C. 2d 232, 237 (1955). Such a conclusion would recognize the great interest of the Commonwealth in the marriage relationship. *Cortese v. Cortese, supra,* at 556, 63 A. 2d at 422; *Bonomo v. Bonomo, supra,* at 454, 187 A. at 224; *Wehry v. Wehry,* 55 Sch. L. R. 1, 2 (1958). We also recognize, however, the right of an aggrieved spouse to obtain a divorce on proper grounds; and to deny the husband a divorce here might be an injustice. We must, therefore, refer this case back to the court below for further inquiry as to the possible effect of appellant's mental illness on her conduct. See *Holland v. Holland,* 57 Del. 308 (1969).

Reversed with a *procedendo.*

JACOBS, J., dissents.