399 A.2d 763

James E. O'LEARY

v.

Lydia Gamez O'LEARY, Appellant.

Superior Court of Pennsylvania.

Submitted March 29, 1978.

Decided March 16, 1979.

Karen J. Pholeric, Media, for appellant.

Donald E. Wydrzynski, Media, for appellee.

Before JACOBS, President Judge and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

Appeal is taken from a decree of divorce from the bonds of matrimony, granted to plaintiff-husband. The complaint sought divorce on the grounds of "indignities." Act of 1929, May 2, P.L. 1237, 23 P.S. § 10(1)(f). A hearing was held before a master, who received the testimony of both parties. Exceptions were filed to the master's report recommending the granting of a divorce, which exceptions were argued before and denied by the lower court. Thereafter, the decree issued.

Appellant now argues that appellee did not meet his burden of proof both as to a course of conduct establishing "indignities" and as to his status as "innocent and injured spouse." Following our independent and complete study of the evidence, *Sells v. Sells,* 228 Pa.Super. 331, 323 A.2d 20 (1974), we agree with the lower court that appellee has made out a legal cause of action for divorce.

■ We are in accord with the lower court's reliance upon the master's report as to the wife's course of conduct which made appellee's life burdensome. Testimony brought forth that appellant was dissatisfied with the housing arrangements able to be afforded by appellee from the time the couple first moved into the mutually-selected home. A serious disparity as to the propriety of methods of disciplining appellant's son, not a product of this marriage, manifested itself in her frequently castigating appellee, sometimes "punishing" him by not preparing meals. Several separations from the years 1971 to 1975 were the result of appellant's telling appellee to pack and leave. Although no denial is made to the fact that appellee was the primary, and usually sole, provider for the family, appellant frequently complained of the hours and conditions of his employment. Also, appellant's insistence upon, over her husband's objection, having an abortion, and the performance thereof, greatly changed their attitudes toward one another. It is clear that as to the testimony, which we have encapsulated above, the master resolved conflicts against appellant, believing the appellee more credible; and the lower court accepted the master's findings. *Bonawitz v. Bonawitz,* 246 Pa.Super. 257, 369 A.2d 1310 (1976). We find no basis for disagreeing with the conclusion below that a humiliating course of behavior was engaged in by appellant which amounted to "indignities." *Ryave v. Ryave,* 249 Pa.Super. 78, 375 A.2d 766 (1977).

■ The burden upon a plaintiff in divorce alleging "indignities" is two-fold; in addition to proving "indignities" he must establish by clear and convincing evidence that he is an "innocent and injured spouse." *Benscoter v. Benscoter,* 200

Pa.Super. 251, 188 A.2d 859 (1963). In this case appellant testified to appellee's having boasted about sexual relations and engagements with several women during the years 1971 to 1975. In addressing himself to this, appellee admitted that he had told his wife of his having had sexual relations with other women, referring to them in an effort "to make her jealous" so that "maybe she would appreciate me." Additionally he testified that he accompanied a friend's wife and children to Daytona Beach, Florida, over a weekend in 1975, allegedly because the woman's medical condition prohibited her traveling alone. The lower court correctly recognized that this conduct tended to make of appellee a person not without blame. There is precious little elucidation of these meretricious encounters in the testimony, and we recognize that husband and wife continued to live together after their occurrence. We will not ignore these unrefuted happenings; and we will not agree with the lower court that they occurred after the marriage was "irretrievably lost", or after grounds had accrued, because their occurrence was sporadic throughout the subject years 1971 to 1975. However the plaintiff spouse need not be wholly free from fault. *Gray v. Gray*, 220 Pa.Super. 143, 286 A.2d 684 (1971). In this case we do not find that appellee's fault rises to a level so as to disqualify him from status of "innocent and injured", because of the paucity of testimony as to his offending conduct and of his wife's accepting him despite her knowledge of the affairs, or at the least her belief that his recounting of his escapades was truthful. See *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974), We hold that appellee has met his burden of establishing himself as "innocent and injured". *Blatt v. Blatt*, 206 Pa.Super. 177, 212 A.2d 907 (1965).

Decree affirmed.

SPAETH, J., files a dissenting opinion.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

In holding that appellee has met his burden of proving that he was an "innocent and injured spouse," the majority relies on *Barr v. Barr,* 232 Pa.Super. 9, 331 A.2d 774 (1974). There, the husband admitted having an affair, but his wife accepted him back into the house after she became aware of his infidelity, and continued to live with him for eight years. Here, appellee may have had several affairs during the parties' four year marriage, and while appellant might be said to have acquiesced in appellee's activities, the record is sketchy. At one point appellant testified that she "just more or less swallowed" appellee's stories. N.T. 37. Later she testified that she was hurt by them. N.T. 48. Moreover, as the majority itself recognizes, appellee spent a weekend with another woman before the marriage was "irretrievably lost." Although appellee claims that he went away with the other woman to help her with family problems, appellant suspected infidelity because the other woman's husband called her repeatedly during the weekend in question and asked her where appellee was. N.T. 71.

Given the drastic consequence of divorce under Pennsylvania law, specifically, the termination of any right of the wife to support, I am unwilling to rely on such a record. There should be a careful inquiry into all facts relevant to a divorce. *Cortese v. Cortese,* 163 Pa.Super. 553, 556, 63 A.2d 420, 422 (1949). If the master fails to make such inquiry, the lower court should, either by remanding to the master for further hearing or by itself securing testimony. *Barr v. Barr, supra,* 232 Pa.Super. at 14–15, 331 A.2d at 777. If the lower court does not thus ensure an adequate record, we should remand, for when the record is incomplete we cannot in good conscience discharge our responsibility to make an independent review of the record, and arrive at our own findings. In *Barr v. Barr, supra,* the principal issue was whether the wife's conduct—which the husband said constituted indignities—was caused by the wife's mental condition. Finding after an independent review that the record on this issue was insufficient, we remanded for a further hearing. That is what I believe we should do here.