## Patton *v.* Patton, Appellant.

Argued April 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*David E. Cohen,* with him *Hugh J. Lane,* and *Lane & Lane,* for appellant.

*Alex Z. Goldstein,* for appellee.

OPINION BY WATKINS, J., June 11, 1957:

This is an appeal from an order of the Court of Common Pleas of Fayette County dismissing the exceptions filed, by the appellant wife, to a decree in divorce, on the ground of indignities.

The parties were married on September 2, 1944. The husband was 32 years of age and the wife 33, at the time of the hearing. There is one child of the marriage, a girl born in 1946, who lives with her mother. The husband is employed as a visitor by the Pennsylvania

Department of Public Assistance, the wife makes her home in Allison, Pennsylvania. The parties have been separated since September, 1954.

The record discloses a course of conduct, on the part of the appellant, from 1946 until September 1954, which the master found supported the charge of indignities to the person.

After the birth of her daughter, the appellant became quarrelsome, indifferent and frigid toward the appellee. She treated her husband and his family with hate and contempt. There were several separations prior to September 1954, and the appellee was always the moving party in trying to persuade his wife to try again to save the marriage.

She nagged him continuously; telling him that she had married beneath her and made this statement publicly many times. She said he wasn't any good; that she did not love him; that she was ashamed to go out with him and would never go out with him socially.

She accused him of making a "botch" of everything, before many people. She had a terrible temper and abused him with vile names before friends and relatives and in public places. She stated publicly that she would never live with him and that he and his family were nothing but trash. She accused him of infidelity all the time. She named a member of the church choir to which they both belonged, as one with whom he was unfaithful. Another time she accused him of being unfaithful with a waitress at a local restaurant. These accusations were made publicly, so that they became the butt of local gossip, to his great embarrassment.

The appellee denies any unfaithfulness; contends that he was a good husband and the master believed him and found him to be the injured and innocent spouse.

"The master's report, although advisory only, is to be given the fullest consideration as regards the credibility of witnesses whom he has seen and heard, and in this respect his report should not be lightly disregarded. . . . However, the master's advantage obtained through seeing and hearing the witnesses exists only where the findings depend upon the credibility of witnesses." *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 263, 130 A. 2d 265. In the instant case, if we believe the testimony of the appellee and his witnesses, and disbelieve the testimony of the appellant and her witnesses, as the master did, the charge of indignities to the person is made out.

"An indignity to the person is an affront to the personality of another, a lack of reverence for the personality of one's spouse. . . . the offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement." *Trimbur v. Trimbur,* 1952, 171 Pa. Super. 541, 546, 91 A. 2d 307; *Paterson v. Paterson,* 1955, 178 Pa. Super. 615, 620, 115 A. 2d 919; *Boyer v. Boyer,* supra, p. 270.

"Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement." *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609 (1945). In *Hewitt v. Hewitt,* 136 Pa. Superior Ct. 266, 7 A. 2d 45 (1939), the Court said, " ' "It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the

particular case and the position in life, character and disposition, of the parties." ' "

In the appellant's brief an argument is based upon the disposing of each alleged indignity separately, and certainly the law is well settled that any single indignity would not support the charge. A single act or an occasional isolated incident does not entitle a spouse to a divorce on the ground of indignity. The law requires such a course of conduct or continued treatment as renders the plaintiff's condition intolerable and his life burdensome. *Esenwein v. Esenwein*, 312 Pa. 77, 167 A. 350 (1933). We believe that the recitation of the course of conduct as set forth above make up the requirements of the law. As a result of the course of conduct, plaintiff lost weight, became very irritable and nervous, and stated that "he would have lost his mind had he continued to live with her." In *Wittmer v. Wittmer*, 151 Pa. Superior Ct. 362, 30 A. 2d 174 (1943), the Court said, "Accusations of misconduct and infidelity made without foundation and persisted in so as to become a course of conduct, constitute a species of indignities and, when they are accompanied by other insulting and humiliating conduct, are sufficient to warrant a decree of divorce." In this case the accusations of infidelity, and as found by the master, without foundation, became a continuous course of conduct.

It is our opinion that the appellee met the burden of establishing, by a preponderance of the evidence, that his wife offered such indignities to the person as to render his condition intolerable and life burdensome; that he is the innocent spouse and that he is entitled to a divorce.

Decree affirmed.