Giuffre *v.* Giuffre, Appellant.

Argued June 11, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William M. Marutani,* with him *MacCoy, Evans & Lewis,* for appellant.

*J. Montgomery Forster,* for appellee.

OPINION BY WRIGHT, J., September 11, 1958:

On July 24, 1956, Josephine V. Giuffre filed a complaint in divorce a.v.m. against her husband, Joseph F. Giuffre, charging indignities to the person. The husband was personally served but did not appear or file an answer. The matter was referred to a master who scheduled a hearing on October 8, 1956. Due notice thereof was personally served on the husband but he did not appear. The master subsequently filed a report recommending that the divorce be granted. This report was approved by the court below on November 13, 1956, but the wife did not complete the proceeding by securing a final decree. On May 10, 1957, upon the husband's petition, a rule was granted to show cause why the matter should not be referred back to the master for further hearing, which rule was subsequently made absolute. The master scheduled a further hearing on June 18, 1957, at which time the husband appeared with counsel. The master thereafter filed a supplemental report, again recommending a decree. The husband's exceptions to this supplemental report were dismissed in the court below and a final decree entered. The husband has appealed.

While counsel for appellant has divided his argument into four sections, he concedes that "the sole question to be determined is whether or not the plaintiff's evidence, even if accepted without reservations, estab-

lishes 'indignities' within the meaning of the Divorce Law".

The parties were united in marriage on October 13, 1951. It was the first marriage for each. Thereafter they lived together as husband and wife at 844 Wynnewood Road, Philadelphia, until their separation in July 1956. They have one child, a boy, born June 26, 1952, who is in the mother's custody. The parties are presently aged 26 and 29 years, respectively. The wife is employed at the Devon Hobby Shop. The husband is a sales engineer. Difficulties between the parties commenced upon their return from the wedding trip, and the union was an unsuccessful one from its very inception.

"The course of conduct amounting to such indignities as would justify a divorce is apparently incapable of specific or of exact definition. Each case must necessarily depend upon its own facts. The principles applicable to the charge of 'indignities to the person' have been fully and frequently set forth by this court. It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character and disposition of the parties. It is well settled, however, that it is not with isolated occurrences that the law concerns itself in determining whether a divorce should be granted upon this ground, but only with indignities so repeated and continuous as to constitute a course of conduct which renders the complaining party's condition intolerable and life itself a burden. Such indignities we have frequently said may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language,

malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient": *Dearth v. Dearth*, 141 Pa. Superior Ct. 344, 15 A. 2d 37. See also *Cutter v. Cutter*, 165 Pa. Superior Ct. 103, 68 A. 2d 192; *Boyer v. Boyer*, 183 Pa. Superior Ct. 260, 130 A. 2d 265; *Patton v. Patton*, 183 Pa. Superior Ct. 468, 132 A. 2d 915; *Wick v. Wick*, 352 Pa. 25, 42 A. 2d 76.

As reiterated in recent opinions by Judges ERVIN and WATKINS, an indignity is an affront to the personality of another, a lack of reverence for the personality of one's spouse: *Robinson v. Robinson*, 183 Pa. Superior Ct. 574, 133 A. 2d 259; *Romano v. Romano*, 183 Pa. Superior Ct. 462, 133 A. 2d 273. The offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement: *Trimbur v. Trimbur*, 171 Pa. Superior Ct. 541, 91 A. 2d 307. Such is the type of conduct relied upon by the wife in the instant case. The evidence discloses, inter alia, that appellant showed no affection or respect for his wife and, ignoring her, preferred to devote his attention to his own affairs. He engaged in numerous card games at their apartment, which were accompanied by excessive drinking and so much noise that on one occasion the wife found it necessary to call the police. Appellant showed no concern when one of his men friends attempted improper liberties with his wife's person. Appellant was frequently absent at night and, when his wife remonstrated, he told her it was his life to do with as he saw fit. He refused to permit his wife to touch the car, and kept his phonograph records under lock and key. On one occasion he shoved his wife against a doorway so that her body was bruised and her arm was bloody. On another occasion, when his

wife was bathing, he turned on the hot water and inflicted such severe burns that bandages were required for several days. At a New Year's party, appellant walked out on his wife, and she was compelled to go to the house of friends for the night. Appellant's course of treatment caused the wife to remove from the common home in the summer of 1954. After living with her mother for a month and a half, upon appellant's promise to reform, she returned to live with him. Appellant then settled back into the same course of conduct as before, and the couple finally parted in July 1956.

Some of the actions testified to by the wife were denied by appellant, while others were admitted by him with an attempt at explanation or mitigation. The master was of the opinion that "defendant's denials of the material incidents charged to him by plaintiff and her witnesses were not convincing, nor was the master impressed with defendant's testimony that his conduct toward plaintiff was exemplary". While we are not concluded by the master's appraisal of the testimony, such appraisal is entitled to considerable weight, especially when his report, as in the instant case, presents a searching analysis and has been approved by the court below: *Bruno v. Bruno*, 185 Pa. Superior Ct. 219, 138 A. 2d 301. Where the finding of the master as to credibility is not at variance with the record, it is entitled to the fullest consideration on appeal: *Hansell v. Hansell*, 182 Pa. Superior Ct. 158, 126 A. 2d 509.

We have yet to mention appellant's undue familiarity with members of the opposite sex. While he chose to treat these episodes lightly, the frequency and circumstances thereof, as substantially admitted by appellant, were in themselves sufficient to make out a case of indignities. The first occasion occurred in 1952

when he brought two female friends home and expected his wife to entertain them. Various other incidents were detailed, one of the more significant being an occasion during the separation in 1954 when appellant brought a girl to the apartment and kept her there until three o'clock in the morning. *Hexamer v. Hexamer,* 42 Pa. Superior Ct. 226, is cited for the proposition that indiscreet conduct with members of the opposite sex is not ground for divorce. This case was distinguished in *Macormac v. Macormac,* 159 Pa. Superior Ct. 378, 48 A. 2d 136, wherein it was held that improper conduct of one spouse with members of the opposite sex, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity. See also *Priest v. Priest,* 162 Pa. Superior Ct. 232, 57 A. 2d 437; *Olbum v. Olbum,* 183 Pa. Superior Ct. 5, 128 A. 2d 125. The conduct of the appellant in keeping a girl "more or less on the string in case I needed companionship" was an unjustified affront to his wife and constituted an indignity to her person.

In conclusion, our review of this record reveals that the master properly recommended the granting of a divorce, and that the court below did not err in approving the master's report and entering a final decree. See *DiNunzio v. DiNunzio,* 185 Pa. Superior Ct. 106, 138 A. 2d 212; *Danze v. Danze,* 185 Pa. Superior Ct. 111, 137 A. 2d 809.

Decree affirmed.