Schware *v.* Schware, Appellant.

Argued March 23, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Wilbur C. Creveling, Jr.,* with him *Harry P. Creveling,* for appellant.

*Stanley V. Printz,* for appellee.

OPINION BY WRIGHT, J., April 13, 1960:

On February 25, 1958, Marjorie W. Schware filed a complaint in divorce a.v.m. against her husband, Allen J. Schware, on the ground of indignities to the person. After taking testimony at three hearings, the master filed a report, March 19, 1959, recommending that the divorce be granted. To this report the husband filed exceptions. On July 28, 1959, the court below dismissed the husband's exceptions and entered a final decree. The husband has appealed.

The parties are residents of the City of Allentown, each 46 years of age at the time of the hearings. They were married on February 26, 1934, and separated on January 22, 1958. One child was born to their union, now an adult, married, and living with her husband. The wife is a nurse for the Lady Garment Workers Union Health Center. The husband is presently unemployed. There is little dispute in the testimony, and the appeal does not involve any unusual legal propositions. The sole question to be determined is whether the evidence establishes indignities within the meaning of The Divorce Law.[1]

In the recent case of *Giuffre v. Giuffre*, 187 Pa. Superior Ct. 154, 144 A. 2d 477, we quoted with approval the following excerpt from the opinion in *Dearth v. Dearth*, 141 Pa. Superior Ct. 344, 15 A. 2d 37: "The course of conduct amounting to such indignities as would justify a divorce is apparently incapable of specific or of exact definition. Each case must necessarily depend upon its own facts. The principles applicable to the charge of 'indignities to the person' have been fully and frequently set forth by this court. It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable

---

[1] Act of May 2, 1929, P. L. 1237, 23 P.S. 1, et seq.

and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character and disposition of the parties. It is well settled, however, that it is not with isolated occurrences that the law concerns itself in determining whether a divorce should be granted upon this ground, but only with indignities so repeated and continuous as to constitute a course of conduct which renders the complaining party's condition intolerable and life itself a burden. Such indignities we have frequently said may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient".

In the case at bar we are particularly concerned with that portion of the foregoing definition which relates to studied neglect. The wife-appellee testified that her husband constantly ignored her and excluded her from his life, that he was in effect merely a "roomer" in the house, that he would come home quite late at night or stay out all night and she would be unable to locate him, that he drank to excess, and that his course of conduct throughout the marriage was a constant source of embarrassment and humiliation. The wife worked during most of her married life in order to properly maintain the home. In the words of the master, "the wife stuck it out to have a home for her daughter and when the daughter got married and left home, she said she had enough and would take it no longer". The wife's testimony was corroborated by that of Mrs. Elsie Farnsworth who knew the parties throughout the entire course of their married life, was a frequent visitor in their home, and stated that "there was no love or affection shown by the husband toward the wife". The failure of this marriage may be summarized

in the following excerpt from an autobiography written by the daughter as one of her high school assignments: "My Daddy and Mother should never have gotten married. They don't belong with each other. They have nothing in common and there is nothing there".

Without doubt the wife was an innocent and injured spouse, indeed the husband makes no assertion to the contrary. Appellant himself testified as follows: "I couldn't ask for a better wife or a better mother for my daughter". And again: "As I stated before, she was a wonderful wife and a wonderful mother. There is no argument on that score. She did a wonderful job". He also admitted that his conduct "wasn't fair to her". And again: "Q. Somewhere in here weren't you aware that your marriage was going bad. A. I was aware that it wasn't fair to my wife and daughter, but it was one of those things that inside of me I knew I was wrong".

Appellant's only contention on this appeal is that his admitted neglect of his wife was not "so gross that an inference of settled hate and estrangement may be drawn". He argues that "neglect which is not studied is merely thoughtless and inattentive", that it lacks "a conscious and intentional design", and that he is guilty not of indignities but merely of "thoughtlessness and inattention to the needs of his wife". Our answer to this contention is that appellant's actions speak more convincingly than his words. His neglect of his wife and child, his absence from the home, his over-indulgence in alcohol, and his refusal to recognize his wife as a human companion, persisted in continuously throughout the duration of the marriage, constitute a course of conduct from which may properly be drawn an inference of settled hate and estrangement. In the words of President Judge HENNINGER: "Since defendant admitted that plaintiff was justified in her complaint that he was neglecting her, we find that the neg-

lect was not as casual as he would now make it appear. It was a deliberate choice on his part. That he wanted the comforts of a home and wife on his own terms does not mitigate the offense . . . It is clear then that plaintiff has been the victim of defendant's studied neglect, continued without respite over a long period of years".

Having made an independent investigation of the evidence set forth in this original record, *McElroy v. McElroy,* 185 Pa. Superior Ct. 78, 138 A. 2d 299, we are clearly of the opinion that it establishes a legal cause for divorce.

Decree affirmed.