Donlan *v.* Donlan, Appellant.

Argued December 13, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

428

*Stanford Shmukler*, with him *Harry P. Voldow*, for appellant.

*Arthur C. Thomas*, for appellee.

OPINION BY MONTGOMERY, J., March 22, 1961:

This appeal is from the order of the court below granting a final decree in divorce in favor of the husband, appellee, on the ground of indignities to the person. The testimony was heard by a master and his report recommended that the complaint be dismissed because the plaintiff failed to meet the burden of proof necessary to sustain the charge. From this recommendation, plaintiff filed exceptions as well as to the findings of fact that the incidents complained of did not reflect settled hatred and estrangement on the part of the defendant and that defendant did not indicate contempt for plaintiff. After argument, the court below sustained the exceptions, made its own findings of fact and conclusions of law and ordered the entry of a final decree in divorce in favor of the plaintiff.

The parties were married at Philadelphia on September 3, 1949. They resided in Philadelphia throughout the entire period of cohabitation until February 1, 1958, when they became permanently separated. This was the first marriage for the plaintiff and the second for the defendant. At the time of the marriage, plaintiff was nearly 29 years of age and the defendant was 34 years of age. No children were born of this mar-

riage. Plaintiff was employed as an instructor at the Drexel Institute of Technology in Philadelphia, and defendant was employed as a stenographer by the City of Philadelphia.

Marital difficulties between the parties commenced immediately after marriage. While they were on their honeymoon, defendant humiliated plaintiff in the presence of others by insisting that he take part in a hypnotism demonstration. Upon their return, defendant announced that she was going to run their apartment and their finances and that she was going to run the place like a store. Plaintiff testified that there were constant disagreements as to finances. After this insecure marital beginning, the parties continued to be confronted with behavior difficulties and serious misunderstandings during the entire period they lived together. The parties were separated on three different occasions before the fourth and final separation.

In the first month of their marriage, defendant refused to visit plaintiff's family in Shamokin, Pennsylvania, and refused to allow him money to go alone. She stated that only bums lived there in broken-down shacks. In October, 1949, defendant thought she was pregnant and became enraged. She accused her husband of ruining her life and threatened to cause an abortion upon herself. Plaintiff testified that he was frequently embarrassed by defendant's discussing their intimate activities in telephone conversations with her acquaintances.

In August, 1951, plaintiff stated he was humiliated in front of his family and friends at a funeral in Shamokin by his wife's portrayal of a homosexual they had once seen on the train and when he quietly reprimanded her for this conduct, she cursed him aloud and stated she would do as she pleased. This action was corroborated by plaintiff's brother who was present at the funeral. Plaintiff further testified that defendant

frequently used profane language directed toward him and his family. In July, 1953, defendant became loud and profane in an argument with a waitress over the type of rye bread which she served. Witnesses corroborated plaintiff's testimony as to defendant's abuse, boisterousness, and use of obscene and caluminous language. She referred to his father as a tramp, to his mother as being no good, and ridiculed his religious beliefs. During 1953 and 1954, defendant became very cold toward him and refused to have sexual relations with him. On one occasion, defendant suggested to him that he engage one of her acquaintances as a sexual partner and when he reprimanded her for this suggestion, she told him that she would like to get something good on him.

On two occasions, defendant caused embarrassing scenes at plaintiff's place of employment at Drexel Institute. Plaintiff testified to other incidents which caused him mental anguish, embarrassment, and ridicule such as threatening suicide, affectionately embracing and kissing a neighboring married man, accusations of infidelity, and such acts of annoyance and disdain as laundering his shirts in dirty dish water so that he should appear sloppy and disorderly at his employment. As a result of this behavior, he suffered from a nervous condition and frequent headaches which necessitated consultation with a physician. He stated that early in 1958, his wife's behavior reached such a point that he was unable to sleep at night, which interrupted his ability to work, and that he was compelled finally to leave defendant permanently.

Defendant's testimony corroborated the occurrence of some of the incidents referred to by plaintiff but she did not ascribe the same significance to them as plaintiff. As to other incidents she denied that they occurred or that they had been inaccurately described. However, she failed to state her versions of these inci-

dents. Her principal complaint disclosed that plaintiff subjected her to unnatural sexual practices in which she participated. She admitted that plaintiff had supported her throughout the marriage.

On this appeal, defendant contends that the court below erred in disregarding the master's findings of fact and opinion as to credibility of witnesses, that plaintiff did not sustain the burden of proving indignities and that the evidence did not justify a finding that plaintiff was the injured and innocent spouse.

In a divorce case, a master's report, although advisory only, should be given full consideration as regards credibility of those whom he has seen and heard and, in this respect, his report should not be lightly disregarded. *Diehl v. Diehl,* 188 Pa. Superior Ct. 491, 149 A. 2d 133; *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 130 A. 2d 265; *Olbum v. Olbum,* 183 Pa. Superior Ct. 5, 128 A. 2d 125. However, the recommendations of the master, being advisory only, are not necessarily controlling either on the trial court or on this court on appeal. *Paterson v. Paterson,* 178 Pa. Superior Ct. 615, 115 A. 2d 919; *Philo v. Philo,* 154 Pa. Superior Ct. 563, 36 A. 2d 833. The law does not confer on a master in divorce the same power as auditor or master in equity, nor does it give his findings of fact and recommendations the same force and effect, and his report does not come to the courts with any preponderating weight of authority which must be overcome. *Wasson v. Wasson,* 176 Pa. Superior Ct. 534, 108 A. 2d 836; *Rech v. Rech,* 176 Pa. Superior Ct. 401, 107 A. 2d 601. Where the master's conclusions as to credibility are at variance with the record, his findings are entitled to little consideration by this court on appeal. *Rankin v. Rankin,* 181 Pa. Superior Ct. 414, 124 A. 2d 639.

Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intention-

al incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. *Schware v. Schware,* 192 Pa. Superior Ct. 166, 159 A. 2d 568. This record discloses that defendant's conduct has been such as to render plaintiff's condition intolerable and his life burdensome. Her continual abuse and ridicule from the time of their marriage to the final separation has been directed at him personally, his profession, his family and his religious beliefs. Her short tempered outbursts and actions have caused great embarrassment to plaintiff in the sensitive areas of his life such as at his place of employment, in front of his friends and acquaintances and in front of strangers in public places.

Indignities to the person as a ground for divorce contemplates a course of conduct or continued treatment. A single act or acts separated by long intervals of time are not sufficient. *Brandman v. Brandman,* 185 Pa. Superior Ct. 392, 138 A. 2d 869; *Patton v. Patton,* 183 Pa. Superior Ct. 468, 132 A. 2d 915; *McGuigan v. McGuigan,* 178 Pa. Superior Ct. 176, 112 A. 2d 440. However, where there is an affront and lack of reverence for the personality of a spouse, as here, and where this continued course of conduct demonstrates that love and affection, on which the matrimonial status rests, has been shattered and permanently replaced by hatred and estrangement, the ground for divorce has been established. *Matovcik v. Matovcik,* 173 Pa. Superior Ct. 267, 98 A. 2d 238; *Patton v. Patton,* supra. There is no substantial denial by defendant of the occurrences complained of but a denial, generally, that she acted in the manner described. As a matter of fact, some of her admissions corroborate the plaintiff.

Defendant relies on the decision of this court in *Dello Buono v. Dello Buono,* 193 Pa. Superior Ct. 118,

163 A. 2d 662, to the effect that where the testimony of the plaintiff is shaken by the testimony of the defendant, a decree will be refused. The decision in that case was predicated on our independent examination of the record and resulted in a conclusion reached opposite to that of the trial court. As we said in that case, it is our duty to consider the evidence de novo, pass upon its weight and upon the credibility of the witnesses to reach an independent conclusion upon the merits. Our examination of this record does not convince us that the evidence of the plaintiff has been shaken to any appreciable degree by the testimony of the defendant, or that plaintiff was not the injured and innocent spouse. We find from the credible evidence that indignities to the person, as the ground for divorce, has been made out sufficiently and that the conclusion reached by the court below was proper.

Decree affirmed.