381 A.2d 925

**Raymond E. RENSCH, Appellee,**

v.

**Beverly Kouri RENSCH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1977.

Decided Dec. 28, 1977.

Morris Gerber, Norristown, with him Marc D. Jones, Norristown, for appellant.

Lawrence F. Flick, Norristown, for appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

JACOBS, Judge:

Beverly Kouri Rensch brings this appeal from a divorce decree entered by the Common Pleas Court of Montgomery County. Appellant alleges that the lower court erred in dismissing her exceptions to the Master's report and in adopting the Master's recommendation to grant the divorce. Appellant cites three bases upon which she believes the lower court's decision should be reversed: (1) neither the Master nor the lower court found as a fact that appellee was an innocent and injured spouse; (2) the evidence presented is insufficient to sustain any finding that appellee was an innocent and injured spouse; (3) the evidence is insufficient to support a divorce decree on the grounds of indignities. For the reasons stated below, we affirm.

The parties were married on November 8, 1974, in Montreal, Canada, and took up residence in Pennsylvania immediately. Difficulties between the parties began within weeks of the wedding and continued until appellant left the marital home on July 25, 1975. She has not returned. On August 26, 1975, appellee filed a complaint in divorce against appellant alleging indignities. One child, Joshua Raymond Rensch, was born of this marriage.

Following three hearings, the Master in this case filed a report recommending that a divorce be granted. Appellant's exceptions were denied and the lower court granted a divorce to appellee on February 28, 1977.

 It is the responsibility of this Court to make a de novo evaluation of the record in divorce proceedings and to decide independently of the master and lower court whether a legal cause of action in divorce exists. *Nacrelli v. Nacrelli,* 288 Pa. 1, 136 A. 228 (1927); *Coxe v. Coxe,* 246 Pa.Super. 231, 369 A.2d 1297 (1976); *Steinke v. Steinke,* 238 Pa.Super. 74, 357 A.2d 674 (1975). With the exception of issues of credibility to which the Master's findings should be given the fullest consideration, the Master's recommendation is advisory only. *Schrock v. Schrock,* 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gehris v. Gehris,* 233 Pa.Super. 144, 334 A.2d 753 (1975). Because of our power to make a de novo review of the record and an independent determination of whether a divorce should be granted ". . . even . . formal inadequacies in the master's report . . . would not be [a] ground for reversal." *Smith v. Smith,* 206 Pa.Super. 310, 316–317, 213 A.2d 94, 97 (1965).

 This Court has the power to reverse the lower court's or the master's finding concerning whether a spouse is innocent and injured. *See,* e. g., *Eifert v. Eifert,* 219 Pa.Super. 373, 281 A.2d 657 (1971). We also have the power to make that determination initially. While it is true that here neither the master's report and recommendation nor the lower court's opinion explicitly found appellee to be the innocent and injured spouse, such a finding is implicit in the entry of the divorce decree on the basis of indignities. Upon

a review of the record, we find sufficient evidence to explicitly hold that appellee is an innocent and injured spouse.

■ To be innocent and injured, a spouse need not be totally free from fault. *Bonawitz v. Bonawitz,* 246 Pa.Super. 257, 263, 369 A.2d 1310, 1313 (1976); *Gray v. Gray,* 220 Pa.Super. 143, 147, 286 A.2d 684, 687 (1971). However, if the parties are equally at fault, no divorce will be granted. *Murphy v. Murphy,* 204 Pa.Super. 576, 578, 205 A.2d 647, 649 (1964). Indignities to the spouse claiming to be innocent and injured which were provoked by that spouse cannot constitute grounds for divorce unless the other spouse's retaliation is excessive.[1] *Verbeck v. Verbeck,* 160 Pa.Super. 515, 521, 52 A.2d 241, 244 (1947).

■ We do not find that appellee, here, was totally free from fault. We do not believe, however, that appellee's faults were sufficient to provoke the degree of indignities levelled against him by appellant. Appellant may have been justified in being hurt and angry when appellee spent many evenings away from home, either at work or with his parents, and when he failed to provide for appellant's needs as she desired. But, such actions are not sufficient justification for the attacks on appellee's character and profession which appellant verbalized to their friends and to appellee's patients.[2] Because appellant's indignities against appellee were out of proportion to any adverse reaction his behavior should have provoked, we find appellee to be an innocent and injured spouse.

An innocent and injured spouse may be granted a divorce when it is found that the other spouse has subjected him or her to "such indignities . . . as to render his or her condition intolerable and life burdensome." The Act of May 2, 1929, P.L. 1237, § 10, *as amended,* the Act of March 19,

1. The necessity of our balancing the relative faults of one spouse against those of the other to see if either can be classified as an innocent and injured spouse demonstrates one of the most frustrating characteristics of the divorce process in this Commonwealth. The courts can try to balance one fault against another; only the Legislature can remove the element of fault from the divorce process.

2. Appellee is a dentist.

1943, P.L. 21, § 1, 23 P.S. § 10(1)(f). Our courts have never developed a standard definition of indignities, but rather have evaluated the facts of each case separately in determining whether there exists a basis for granting a divorce.

"Indignities may consist of vulgarity, unmerited reproach, habitual contumely studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement."

*DeBias v. DeBias,* 245 Pa.Super. 266, 272, 369 A.2d 396, 399 (1976); *Schrock v. Schrock,* 241 Pa.Super. at 58, 359 A.2d at 438; *Gehris v. Gehris,* 233 Pa.Super. at 148, 344 A.2d at 754; and cases therein cited.

It has thus generally been determined that such conduct must constitute a course of behavior which is humiliating and degrading, inconsistent with the injured individual's position as a [spouse], making that condition intolerable and life a burden to [the spouse]. A single act of indignity is not sufficient, but a course of treatment "of such character as to render the condition of any [person] of *ordinary sensibility* and *delicacy of feeling* intolerable and [his or] her life burdensome," will present grounds for divorce. [Citation omitted.] Such conduct is understood to manifest the spirit of malevolence, hate and estrangement which has come to replace natural love and affection in a marriage and is central to a charge of indignities. [Citation omitted.] (Emphasis in original.)

*Steinke v. Steinke,* 238 Pa.Super. at 78, 357 A.2d at 676.

 Our review of the record reveals that shortly after this marriage began, appellant commenced a course of conduct which we find sufficient to render appellee's condition intolerable and his life burdensome. Appellant complained that appellee did not support her in the style to which she would like to have become accustomed, yet she also complained because he spent long hours at his office rather than at home with her. She resented the fact that appellee spent a considerable amount of time with his parents, especially his mother after she was seriously injured in an automobile

accident. She expressed her displeasure in foul and vulgar language stating to appellee's acquaintances and patients that he had a perverted sexual relationship with his mother. She openly told others that appellee was a "lousy husband," a poor lover, a "mama's boy," and "not the best" dentist. In short, "Her continual abuse and ridicule from the time of their marriage to the final separation has been directed at him personally, his profession, his family, . . . his religious beliefs," his country, and his sexual ability. *Donlan v. Donlan,* 194 Pa.Super. 427, 432, 169 A.2d 121, 124 (1961). We find that such abuse, verbalized not only to appellee, but also to other members of his family, his friends, and his patients, manifests "the spirit of malevolence, hate and estrangement . . . central to a charge of indignities." *Steinke v. Steinke,* 238 Pa.Super. at 78, 357 A.2d at 676. Appellant's behavior has been a source of humiliation to appellee, a person of ordinary sensibility and delicacy of feeling; his condition has become intolerable and his life burdensome.

Decree affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

I concur in the majority's result but I cannot join in its opinion for the following reasons.

-1-

I disagree with the majority's statement that "a finding [that one spouse is innocent and injured] is implicit in the entry of the divorce decree on the basis of indignities." At 297. This is so only if the master and the lower court knew that to grant a plaintiff a divorce it must be shown that the plaintiff was an innocent and injured spouse. While I am confident that the vast majority of masters and courts do know this, this confidence makes me mistrust this case more rather than less. The master made no mention of the issue; nor did the lower court, even though appellant's Exceptions 14 and 15 were respectively: "The learned Master erred in not finding that the plaintiff was not an innocent and

injured spouse." "The learned Master erred in not finding that the plaintiff had subjected the defendant to gross, unwarranted indignities to her person." (I grant that these exceptions are rather garbled. Nevertheless, they do make plain that appellant considered the plaintiff's [appellee's] status as an innocent and injured spouse an issue on which appellant wanted the lower court's ruling.)

As a general rule, I think we should do better to insist that masters and lower courts state explicitly that a plaintiff is an innocent and injured spouse. Such insistence would help to prevent the situation we have here: no findings of fact on a disputed issue. Without findings, we cannot properly perform appellate review. It is true that in divorce cases our duty is to " 'review the testimony and adjudge whether it sustains the complaint of the libellant.' . . . [*Breene v. Breene,* 76 Pa.Super. 568, 570 (1921).] Such decision in each divorce case should be founded on the court's personal examination of the testimony . . . ." *Nacrelli v. Nacrelli,* 288 Pa. 1, 6, 136 A. 228, 229 (1927). However, where the case turns on credibility, we are instructed by the case law that the master's findings are "entitled to the fullest consideration." *See E. g., Smith v. Smith,* 157 Pa.Super. 582, 583–85, 43 A.2d 371, 372 (1945).[1] Here, on the disputed issue of appellee's status as an innocent and injured spouse, we have no findings of fact. Appellant testified at length about appellee's mistreatment of her. Appellee contradicted her testimony. Did the master believe appellant's testimony? A majority of this Court might say that it does not matter whether he did or did not (and therefore that it does not matter that he made no findings on the point), since our "review extends to questions of credibility." *Coxe v. Coxe, supra* note 1, 246 Pa.Super. at 236, 369 A.2d at 1297. As this case demonstrates, however, this approach reduces the master's function to that of referee and reporter and ignores his usefulness as an

1. I have elsewhere reviewed the difficulties I find in harmonizing these principles of review in divorce cases. *Coxe v. Coxe,* 246 Pa.Super. 231, 369 A.2d 1297 (1976) (Dissenting Opinion by Spaeth, J.).

assessor of the parties' truthfulness. It has sometimes been said that the master's report is "advisory only." *Vautier v. Vautier,* 138 Pa.Super. 366, 367, 11 A.2d 207, 208 (1939). The majority's opinion implies that we may reach a decision without even an advisory report from the master—for, without findings of fact on an important issue, the report gives us no advice at all.

-2-

Despite my disagreement with the majority's reasoning, I am satisfied that the majority's result is fair, and that a remand for findings is not necessary. I reach this conclusion only by taking as true all of appellant's testimony on the subject of appellee's mistreatment of her.[2] So taken, appellant's testimony nevertheless reveals that "[her] conduct . . . was so predominantly destructive to the marital relationship in its many and varied instances of indignities, that in totality the husband's indiscretions were . . . minimal as contrasted to the prolonged and extreme conduct displayed by the wife." *Sells v. Sells,* 228 Pa.Super. 331, 335, 323 A.2d 20, 22 (1974). Therefore, as in *Sells,* it was satisfactorily proved that appellee was innocent and injured.

---

**2.** This may be what the majority has done; I cannot be sure. The majority states only that "[u]pon a review of the record, we find sufficient evidence to explicitly hold that appellee is an innocent and injured spouse," At 298, and later mentions some of appellant's allegations. *Id.* at 299.