## McCane v. McCane

C.P. of Berks County, no. 01-11756.

*John A. Hoffert Jr.,* for plaintiff.

*Randy A. Rabenold,* for defendant.

LASH, *J.,* April 5, 2006—The matters before this court are the exceptions of defendant, Paula M. McCane (Wife), to the report and recommendation of the special master in divorce, Jeffrey J. Howell, Esquire (master). The master had issued his report on September 24, 2004, entering findings of fact, conclusions of law and a recommendation, requesting the court grant a divorce and order equitable distribution of the parties' marital assets. The master recommended that Wife's claims for alimony, counsel fees and costs be denied. Upon remand from this court, the master issued a supplement to his report, again requesting that this court deny alimony.

The parties are husband and wife, having been married on March 12, 1976, separating on or about March 3, 2002. The parties have no children.

On November 19, 2001, plaintiff Michael G. McCane (Husband) filed for divorce, claiming an irretrievable breakdown of the marriage pursuant to §3301(c) of the Pennsylvania Divorce Code.[1] Wife responded by filing an answer and counterclaim on December 11, 2001, alleging indignities pursuant to section 3301(a)(6) of the Divorce Code.

The case proceeded to the master, who held hearings on July 7 and August 19, 2004. Subsequently, the master entered his findings, conclusions and recommendations on September 24, 2004, recommending a divorce under section 3301(c) of the Divorce Code. From the marital estate of approximately $218,000, the master awarded

---

1. 23 Pa.C.S. §3101 et seq.

Wife approximately 60 percent, or $131,000, worth of assets as equitable distribution. He denied Wife's claims for counsel fees, costs and expenses, and permanent alimony.

Wife filed exceptions to the report and recommendation on October 4, 2004. In conjunction therewith, Wife filed a petition for emergency relief "in the nature of a request to reopen the special master's proceedings." The relief petition sought leave of court to obtain additional testimony regarding Wife's medical condition, particularly as it related to the denial of alimony. According to the petition, additional tests had been conducted, which indicated that Wife may suffer from lupus and a lupus-related condition known as scleroderma. This condition may be permanent, debilitating, and render Wife incapable of being employed in any capacity.

The master had found that Wife was working approximately 21 hours per week as a telephone operator, earning $13.34 per hour. There was testimony regarding her medical problems, but no final diagnosis had been made. The master found that Wife suffered from medical problems including "allergies, asthma, migraine headaches, chronic myofascial pain syndrome, fibromyalgia, thoracic outlet syndrome and left foot plantar fasciitis, experiencing left-sided swelling, pain and weakness in the neck and shoulder, ankle edema, left arm numbness and difficulty in walking.[2]

On April 29, 2005, the court granted the petition for emergency relief and entered an order remanding the

---

2. Master's findings 24 and 25, report of special master filed September 24, 2004.

matter back to the special master for the purpose of taking additional testimony "solely on the issue of [Wife's] new diagnosis regarding her medical condition and how that new diagnosis impacts on her earning capacity, if at all, and how the earning capacity impacts on the legal issues relating to equitable distribution and ancillary matters, including alimony." The court deferred disposition on Wife's exceptions.

On October 12, 2005, the master held the hearing on remand. Subsequently, on October 20, 2005, the master issued a supplement to his report, which included the following findings:

"(5) Wife's medical condition, previously attributed to myofascial pain syndrome resulting from a work-related injury in 1995, now has been determined to be systemic scleroderma.

"(6) Scleroderma is characterized initially by skin edema which is replaced by scar tissue causing the skin to become thick and tight.

"(7) Scleroderma symptoms suffered by Wife include hand sensitivity to cold, inflammation of joints and tendons, anemia and shortness of breath.

"(8) Scleroderma complications experienced by Wife include collagen formation which obstructs oxygenation of the blood in the lungs and progressive scarring of the lungs.

"(9) Scleroderma treatment to be provided to Wife will include administration of a chemotherapeutic drug called cyclophosphomide once monthly for a period of six months.

"(10) At that time Wife will be re-evaluated to determine if this regimen has arrested the progression of the disease.

"(11) This treatment will be followed by intense occupational therapy which will be designed to increase hand functionality, strength and range of motion.

"(12) Presently Wife requires assistance with dressing. She cannot prepare meals for herself.

"(13) Presently Wife resides with her parents. Her mother provides any assistance which Wife needs to accomplish activities of daily living.

"(14) Presently Wife cannot work.

"(15) Efficacy of the treatment program developed by Wife's doctors will affect her ability to work in the future.

"(16) Wife has applied for Social Security Disability. She anticipates a ruling on her claim in late October of 2005."

Despite these findings, the master declined to recommend alimony. He noted that there was a dearth of evidence regarding Wife's living expenses, a "critical component of any decision to award alimony as well as the amount in duration thereof." He also cited Wife's apparent squandering of her preliminary distribution in equitable distribution of over $75,000, received from the sale of the marital residence.

The matter was returned to this court for disposition of Wife's exceptions and on Wife's additional exceptions filed to the supplemental report. We note, initially, that exceptions 2, 3, 4, 5, 6, 7, 15A, F, G, I, K, 16, 17, 26 and

28 relate to Wife's medical condition and the subsequent denial of alimony. Some of these issues have been resolved through the remand, the taking of additional testimony and the master's filing of the supplemental report. The core issue, denial of alimony, remains, however, as raised again in Wife's exceptions to the supplemental report.

We turn first to the master's findings on the grounds for divorce. Wife contends that the master erred in declining to grant her a divorce on fault grounds. (Exceptions 15D and E, 21, 22 and 23.) The master recommended a divorce decree on no-fault grounds under 3301(c) of the Divorce Code, as requested in Husband's complaint. Regarding Wife's counterclaim, alleging indignities, the master states:

"The issue of Wife's counterclaim for indignities also was considered. For a divorce to be granted on the grounds of indignities, wife must prove that Husband engaged in a course of conduct which was humiliating and degrading to her to the point where her condition was intolerable and her life burdensome. *Ryave v. Ryave,* 249 Pa. Super. 78, 375 A.2d 766 (1977). Wife must prove that Husband's behavior destroyed the affection which previously had existed between them and that, consequently, hatred and estrangement replaced their loving relationship. *Donlan v. Donlan,* 194 Pa. Super. 427, 169 A.2d 121 (1961).

"Wife testified that she went 'into shock' and that her hands and feet 'went purple' when Husband advised her that he had filed for divorce. Although she apparently believed she and Husband were married happily, she complained in explicit detail that he had been inatten-

tive to her sexual needs and that, after he discontinued marijuana use, he became sullen and moody. Wife's testimony, which included other sordid allegations, if believed, does not prove that hatred and estrangement dominated their relationship or that he had committed indignities against her."

The mere availability of a no-fault basis for granting a divorce does not preclude the court from granting a divorce on fault grounds. The Pennsylvania Superior Court in *Restifo v. Restifo,* 339 Pa. Super. 352, 489 A.2d 196 (1985), found that the 1980 Divorce Code does not expressly provide for preferential treatment for no-fault claims. As the court expressed, the legislature clearly intended to retain the traditional fault grounds, apparently on an equal footing with no-fault grounds.

Further, there may be a specific economic purpose for granting a fault divorce when a no-fault claim is also raised, such as a situation where the granting of a fault divorce to one party precludes an award of alimony to the other party. See *Perlberger v. Perlberger,* 426 Pa. Super. 245, 262, 626 A.2d 1186, 1195 (1993).

Here, however, there does not appear to be any additional benefit to Wife from the granting of a fault divorce. A divorce on no-fault grounds does not affect her ability to process all of her economic claims. Under the Divorce Code, she is expressly permitted to raise marital misconduct in determining whether alimony is appropriate.[3,4]

---

3. Section 3701(b)(14) of the Divorce Code.

4. Further, it appears that Wife's counsel offered the evidence of misconduct for alimony purposes only. (N.T., July 7, 2004, p. 68.)

Furthermore, under the Divorce Code, a divorce on fault grounds is not to be granted solely for personal redress. As the Superior Court noted in *Perlberger, supra* at 261, 626 A.2d at 1195, the wife in that case apparently sought "recompense for husband's alleged misconduct; however, 'the vindication of private rights or the punishment of matrimonial wrongs' is expressly proscribed in the Divorce Code's legislative findings and intent." See 23 Pa.C.S. §3103(a)(3).

Even assuming that there is a legitimate basis for proceeding on Wife's counterclaim, we find that the master was within his discretion in finding that Wife failed to meet her burden. While we agree that some of Wife's allegations could be construed as a course of conduct by Husband that could render Wife humiliated and degraded, it is also true that Wife considered her marriage to be progressing acceptably. By no means did she determine her condition to be "intolerable," at least not until Husband announced he had filed for divorce. Wife's exceptions 15D and E, 21, 22 and 23 are dismissed.

Moving to the master's recommended distribution of the assets, we note that in determining an equitable distribution award, the trial court is not bound by the master's recommendations. Although the master's report is entitled to great weight, it is the trial judge who has the responsibility for imposing the distribution. *Tagnani v. Tagnani,* 439 Pa. Super. 596, 654 A.2d 1136 (1995).

Wife objects to the master accepting Husband's valuation on real estate held by the parties in Lycoming County, Pennsylvania. (Exceptions 10, 11 and 20.)

In exception number 10, Wife contests the master's valuation of a furnished cabin in McHenry Township,

Lycoming County, Pennsylvania, which the master found to be worth $56,000. This figure is based on a written appraisal submitted on Husband's behalf. Wife also submitted a written appraisal in which the appraiser estimated that the fair market value of the property is $77,000.

The parties' presentations were similar. Both parties hired certified appraisers to prepare a written appraisal report. Both appraisers relied upon the market data approach, comparing sales of similar properties, then making adjustments, where appropriate, to reach an appraised figure for the subject property. Unfortunately, neither appraiser testified and, therefore, the master was not provided with sufficient information to analyze the rationale behind the adjustments made on the comparables, which appear in the appraisals with only cursory explanations.

After reviewing the comparables, the master decided that Husband's appraisal was superior. The location of the comparables in Husband's appraisal was closer to the subject property. The average gross living area of Husband's comparables was more in line with the subject. Husband's comparables also were more similar in lot size.

While these factors do support Husband's position to some extent, they do not provide sufficient weight to merit the master's determination to rely solely on Husband's appraisal. In fact, based on the adjustments made by the appraisers, the distinctions on these factors are relatively minor. The average adjustment for gross living area by Wife's appraiser was upwards by $1,476, while Husband's appraiser adjusted downwards by 1,200 square feet for his comparable number one and upwards

by $700 for comparable number two. Regarding acreage, Wife's comparable number two presented the greatest disparity in lot size, 4.75 acres, but that only warranted a downward adjustment of $3,450. Husband's appraiser adjusted downward by $1,000 for two comparables which had approximately 1.5 acres more land than the subject. Neither appraiser appeared to make any adjustment for location.

We also concur with Wife's contention that the master should not have considered the assessment on the property. In this case, Lycoming County established a new tax base year of 2004, being effective for the 2005 tax year. Under these circumstances, the assessed value may bear some relation to fair market value. However, the 2004 assessment is an estimate based on county action, and is subject to appeal where fair market value would then be determined by a court of competent jurisdiction. It is not, in and of itself, an accurate reflection of fair market value and cannot be considered probative.

Finally, Wife's point that the master accepted Husband's appraisal as superior because it was "more nearly in conformity with U.S.P.A.P. standards" cannot be maintained without these standards properly being presented into the record, either on an evidentiary or judicial notice basis.

Because the appraisers were not present to testify, limiting the master's ability to formulate a reasoned opinion, because the master's reasons for his determination are not sufficient on the basis of this record, and because both appraisals appear, at least on the surface, to present valid opinions on fair market value, in light of the comparables chosen and the quantitative adjustments

made, this court is relegated to giving equal weight to both experts' reports. When a court is presented with conflicting evidence by equally credible experts, the court can, within its discretion, conclude that the fair market value of the property is somewhere between the values presented by the parties. See *Westinghouse Electric Corporation v. Board of Property Assessment Appeals and Review of Allegheny County,* 539 Pa. 453, 464, 652 A.2d 1306, 1312 (1995). Accordingly, Wife's exceptions numbers 10 and 20 are sustained. The value of the cabin in McHenry Township shall be modified to be the median of the $56,000 appraisal and the $77,000 appraisal, or $66,500.

In exception 11, Wife objects to the master's finding that the present value of Husband's one-half interest in the 15.7 acres of land in Lycoming County, Pennsylvania, is worth $15,040. The land is unimproved, rural forest acreage. The evidence presented included a written appraisal submitted on Wife's behalf estimating the fair market value of the lot to be $40,000 and the property assessment set at $30,080.

The master accepted the assessment against the appraisal because the appraisal "did not consider the effect upon value of the 'McCane-McCane agreement' dated March 17, 1998, which restricted the sale of the co-tenants' interest as set forth therein."

The "McCane-McCane agreement" was entered in contemplation of the conveyance by Edward M. Mogel of his one-quarter interest in the property to Charles W. McCane, resulting in Husband and Charles W. McCane holding the property equally as tenants in common. The agreement provided for certain restrictions limiting the

ability of either party to sell or encumber the property. The party proposing to sell the property has to give written notice to the other party of his intention. Further, the party remaining has the first option to purchase the property on terms agreeable to the parties or, in lieu thereof, upon valuation by an appraiser or appraisers.

Upon review of the agreement, this court does not find any terms or conditions which would affect fair market value of the property. The only restriction of either party to selling his interest to a third party is the option of the other party to purchase the interest. Under the terms of the agreement, the sale would be on a fair market value basis, either to the other party for a price determined by an appraiser, or through an arms length transaction to a third party.

Further, the master cannot rely upon the assessment for determination of fair market value, for reasons set forth. Wife's appraisal stands alone as the only competent evidence of the value of the property. Where the evidence offered by one party in equitable distribution action is uncontroverted, the court may adopt this value for the property, even though the resulting valuation would have been different if more accurate and complete evidence had been presented. *Baker v. Baker,* 861 A.2d 298, 302 (Pa. Super. 2004).

Wife's exception number 11 is sustained. This court finds Husband's one-half interest to have a fair market value of $20,000.

Wife's exception number 12 contests the master's finding on personal property located in the Lycoming County, Pennsylvania cabin. The master relied on Husband's ap-

praisal estimating fair market value to be $4,192. Wife submitted a separate appraisal with fair market value totaling $1,191. The two appraisals are nothing more than a list of items with an estimated value. There was no expert testimony. The appraisals do not contain any description of the items, nor is there any opinion on physical condition. Fair market value cannot be properly ascertained from these documents. Once again, the only recourse is to split the difference. Wife's exception number 12 is sustained. The value of the property located in the Lycoming County, Pennsylvania cabin is reset at $2,691.50, being the median between the two appraisals.

Wife's exception number 13 appears to be nothing more than an objection to the master's statement that Husband deposited funds into a savings and checking account at M&T Bank.[5] In her brief, Wife argues that she handled the banking, as well as the parties' finances and investments. There does not appear to be any dispute, however, on the value of this asset or whether it is marital. Wife's exception number 13 is dismissed as de minimis.

Wife's exception number one contends that the master's reporting of Husband's gross earnings for calendar years 2001, 2002, 2003 and 2004 were incorrect. Wife's argument is that the yearly income figures found by the master did not include Husband's 401K contributions and, therefore, are not true representations of Husband's gross income.

---

5. Master's finding 66.

Wife is correct in this assessment, but does not consider that the master included Husband's 401K as an asset, subject to equitable distribution. In fact, the master recommends that wife is to receive 60 percent of the 401K account.

Money included in an individual's income for the purpose of calculating support or alimony may not also be labeled as a marital asset subject to equitable distribution. This would constitute "double dipping," which cannot be condoned. *Rohrer v. Rohrer,* 715 A.2d 463, 465-66 (Pa. Super. 1998).

Under these facts and circumstances, it is more appropriate to treat the funds invested in the 401K account as assets, not income. In fact, it appears that the master's treatment of the fund provides a greater benefit to wife than would have occurred if the fund were included as part of Husband's gross income. Wife's exception number one is dismissed.

Wife's exceptions 15B and 15C raise that the master failed to find that the marriage is the first for both parties and that the marriage is a long marriage, including 26 years of coveture and 28 1/2 years overall as of October 4, 2004. While it appears that the master did properly take these factors into account in making his determination, it is, nevertheless, appropriate to include these facts as findings. Exceptions 15B and 15C are sustained and shall be included as findings.

In exception 15H, wife states that the master "failed to find that [Husband], from about 1995 to separation in 2002, failed to maintain the marital home, while he began planning for his divorce and separation by improv-

ing and carefully maintaining the Lycoming County, Pennsylvania cabin." Since Wife did not contest the master's valuation of the marital home, any maintenance issues regarding that home are now deemed moot. The maintenance of the cabin would have been considered by the appraisers and included as a factor in their determinations. Wife's exception 15H is dismissed.

Wife's exception 24 complains about the master's failure to grant to Wife a portion of Husband's Roth individual retirement account or Husband's IRA. To the extent this issue goes to a percentage of distribution, the issue is resolved by this court's review of exception 25 herein. To the extent Wife is insisting on these IRAs as part of her distribution, this court finds that this insistence is without basis. The master is within his discretion in determining the division of the assets. There is no particular reason why Wife should receive funds from the IRAs, as opposed to other assets, so long as she is treated equitably in the distribution scheme. Exception 24 is dismissed.

In exception 25, Wife objects to the overall property distribution of the marital assets, which appears to be approximately a 60 percent/40 percent distribution in favor of Wife.

We note first that the rulings by this court have increased the cumulative fair market value of the marital assets by $13,600. On remand, the master shall make appropriate adjustments to reflect the additional valuations, as set forth.

Secondly, exception number 25 is considered within the context of the master's determination that Wife should

receive no alimony. For reasons set forth herein, this court has determined that an award of alimony is appropriate.

In light of the factors considered by the master and this court in fashioning an appropriate award for equitable distribution, it appears that the 60 percent/40 percent distribution is reasonable. This takes into account the proposed award of alimony, as set forth, as well as the length of the marriage of the parties, the size of the marital estate, the relative contributions of each party, the payment by Husband of some of Wife's bills, the payments made by Husband for alimony pendente lite, and Wife's apparent willingness to dissipate her share of the marital assets through her spendthrift habits. The master was within his discretion in the proposed distribution. Exception 25 is dismissed.

Exceptions 14, 19 and 27 all contest the master's refusal to require Husband to pay Wife's counsel fees. "The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial advantage; the parties must be 'on par' with one another." *Brody v. Brody,* 758 A.2d 1274, 1281 (Pa. Super. 2000), quoting *Perlberger v. Perlberger, supra,* 426 Pa. Super. at 283, 626 A.2d at 1206-1207. Further, "[c]ounsel fees are to be awarded only upon a showing of need." *Brody,* 758 A.2d at 1281, quoting *Harasym v. Harasym,* 418 Pa. Super. 486, 496, 614 A.2d 742, 747 (1992).

Wife's claim for counsel fees cannot be considered apart from the order entered in her favor for alimony pendente lite (APL). The purpose of alimony pendente lite is to provide the receiving party with financial re-

sources to litigate the divorce proceeding. *Litmans v. Litmans,* 449 Pa. Super. 209, 673 A.2d 382 (1996).

On April 18, 2002, the court entered an award for APL in favor of Wife, requiring Husband to pay Wife $1,250 a month, with the effective date of the order being February 20, 2002.[6]

The APL order continues to charge, although we note that Husband, on February 22, 2006, filed a petition to modify the APL order and that the court on February 27, 2006 ordered escrow of all subsequent payments, pending resolution of the petition to modify.[7] Under the order, Husband was required to pay, at a minimum, $1,250 a month from February 20, 2002 until February 22, 2006, totaling approximately $60,000. This sum is more than ample to enable wife to properly process the divorce proceeding and ancillary claims, including making payment for attorney and expert fees. The master's decision to deny Wife's claim to have her attorney's fees paid by Husband was proper. Exceptions 14, 19 and 27 are dismissed.

The final issue is alimony. Preliminarily, we address exceptions 8, 9 and 18, relating to Wife's income. Exception 8 is a claim by Wife that the master failed to include that, should Wife be fully disabled, her long-term disability would pay her only about $600 a month. In essence, Wife is arguing that the master set forth incorrectly the formula for her long-term disability pay. Be-

---

6. Court of Common Pleas of Berks County, docket no. 02060500, PACSES case no. 532104285.

7. Also of note is the fact that Wife had previously, on June 2, 2005, filed her own petition to modify, requesting an increase due to her inability to work. That petition is also pending.

cause of the master's finding that Wife is totally disabled, this matter is remanded to the master to calculate the expected disability payments for Wife, to enable him to assess an appropriate value for alimony. Wife's exception 8 is sustained.

Wife's exception 9 contests the master's expectation that Wife would receive $870 per month from Social Security Disability benefits. At the time of the master's hearing, Wife's disability claim was pending. At the time of argument, counsel for Wife stated that the disability claim has been processed and that Wife has been approved for payments. The matter is, therefore, remanded to the master to enter a finding regarding Wife's Social Security Disability payments, to enable the master to properly assess an appropriate figure for alimony. Wife's exception number 9 is sustained.

Wife's exception 18 contends that the master's statement that Wife will receive monthly payments of $855 from her Reading Hospital pension is incomplete because the master failed to state that the pension payments will not begin until Wife reaches age 65. Wife's argument is supported by her accrued retirement benefits statement. (Exhibit 43.) As already stated, Wife's income, both present and future, is important to resolution of the alimony claim. Certainly, if Wife does not receive these payments until age 65, that should be taken into consideration. This matter is remanded to the master to augment his finding. Wife's exception 18 is sustained.

We turn then to the question of whether the master erred in refusing to award alimony to Wife. In making this determination, we follow the doctrine set forth by the Pennsylvania Superior Court in *Plitka v. Plitka,* 714

A.2d 1067, 1069 (Pa. Super. 1998), where it states the following:

" 'The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met.' *Twilla v. Twilla,* 445 Pa. Super. 86, [90,] 664 A.2d 1020, 1022 (1995). (quotation omitted) In determining the nature, amount, duration and manner of payment of alimony, the court must consider all relevant factors, including those statutorily prescribed for at 23 Pa.C.S. §3701, *Alimony,* (b) *Relevant Factors* (1)-(17). 'Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.' *Twilla, supra* 664 A.2d at 1022, quoting *Perlberger v. Perlberger,* 426 Pa. Super. 245, [277-78,] 626 A.2d 1186, 1203 (1993), *appeal denied,* 536 Pa. 628, 637 A.2d 289 (1993)."

We also note that the alimony statute must be applied in a non-mechanical manner so that a reasonable and compassionate result may be reached in each case. *Baker v. Baker, supra,* 861 A.2d at 303.

From the master's finding, it is clear that Wife is currently unable to work and, in fact, needs assistance to aid her in performing the most basic functions such as dressing herself. Her limitations will continue indefinitely.

It also appears that Husband receives an approximate net income of $5,000 per month. Wife will be receiving between $1,600 to $2,000 a month from Social Security

Disability and her insurance disability payments. As already discussed, Wife will be receiving 60 percent of the marital assets, which after adjustments made based on our previous ruling, shall total approximately $231,600, of which Wife's share would equal approximately $139,000 worth of assets. We find that many of the relevant factors under section 3701(b) of the Divorce Code militate in favor of granting Wife an award of alimony. Most prevalent are the following subsections: (1) the relative earnings and earning capacities of the parties, (2) the ages and the physical, mental and emotional conditions of the parties, (3) the sources of income of both parties, (5) the duration of the marriage, (13) the relative needs of the parties, and most importantly, (17) whether the party seeking alimony is incapable of self support through appropriate employment. Conversely, none of the factors support a denial of alimony.

As stated, one of the master's reasons for denying alimony was Wife's apparent squandering of her preliminary distribution of marital assets, totaling somewhere between $75,000 and $84,000. The implication is that Husband should not be required to provide financial aid to Wife when she refuses to do her part in preparing for her future.

We agree that Wife should not be permitted to benefit from dissipating assets within her control. We also acknowledge that the court must take into account the equitable distribution scheme, as relative assets of the parties are a factor under the alimony code which must be considered. *Nemoto v. Nemoto,* 423 Pa. Super. 269, 279, 620 A.2d 1216, 1220-21 (1993). However, the equitable distribution factor is based on the availability of the as-

sets to the parties, not what a party did with the assets upon receipt. We find that had Wife been prudent in overseeing the assets she had previously received, she nevertheless would be dependent on Husband for financial maintenance. Her physical condition is extreme. Through enactment of the alimony provisions in the Divorce Code, the General Assembly sought to protect divorced persons who cannot support themselves. Wife should be protected under these provisions.

We enter the following order:

## ORDER

And now, April 5, 2006, upon consideration of the exceptions of defendant, Paula M. McCane, to the report and recommendation of the special master in divorce, response thereto, briefs filed by the parties, and after argument held, the court rules as follows: Exceptions 1, 13, 14, 15D, E and H, 19, 21, 22, 23, 24, 25 and 27 are denied. All other exceptions are sustained. The matter is remanded to the special master for further proceedings consistent with this opinion.